Charles M. Hughes, J.
The Grand Jury -of the County of Saratoga during the Trial Term of May, 1965, returned an indictment against Andrew Francis Chalía, Jr. and Janet K. Chalía, his wife. The indictment contained two counts, the first of which charged them with the crime of manslaughter in the second degree in violation of section 1052 of the Penal Law in that on or about and between January 19, 1965 and January 21, 1965, they inflicted wounds upon their son Andrew Francis Chalía, III, which resulted in his death. The second count charged a violation of section 242 of the Penal Law, which is assault in the second degree, alleging one having been committed upon young Chalía between the dates of January 19, 1965 and January 21,1965, Apparently the child was two years of age at the time of the commission of the alleged crime.
Manslaughter in the second degree is defined, as follows: “ § 1052. Manslaughter in second degree defined. Such homicide is manslaughter in the second degree, when committed without a design to effect death: * * * 2. In the heat of passion, but not by a dangerous weapon or by the use of means either cruel or unusual ”,
Assault in the second degree is defined as follows: “ § 242. Assault in second degree. A person who, under circumstances not amounting to the crime specified in section two hundred and forty * * * 3. Wilfully and wrongfully wounds or inflicts grievous bodily harm upon another, either with or without a weapon ”.
After the alleged commission of the crime, and on or about the 22nd day of January, 1965, the defendants Andrew Francis Chalia, Jr. and Janet K. Chalia were taken into custody and an alleged confession was obtained from each of them on that day, sworn to before William E. Ebel, a notary public. The statement of Andrew Francis Chalia, Jr. was taken by R. J. Amszynski, a member of the New York State Police, and the statement of Janet K. Chalia was taken by Roger J. Dorn, likewise a member of the New York State Police. The title of Amszynski was that of an Investigator, and that of Roger J. Dorn was that of a Senior Investigator.
The defendant Janet K. Chalía was held in custody to await the action of a Grand Jury, and Edmond N. Amyot, Esq., was assigned as her counsel by the Honorable Michael E. Sweeney, Justice of the Supreme Court.
During the May 1965 Term presided over by this court, the indictment was returned and this court assigned Joseph E. Rosch, Esq., as counsel for the defendant Andrew Francis Chalía, Jr.
*847 Every step was taken by the assigned counsel to protect the rights of these defendants from the date of their assignment. The defendants were duly arraigned and thereafter a motion was made by their counsel for an inspection of the Grand Jury minutes and, in the alternative, to dismiss the indictment. The court ordered the delivery of the minutes taken before the Grand Jury to the court which were read by the court on several occasions. As a result of the reading of these minutes, it was felt that certain prejudicial evidence was offered before the Grand Jury, and thereupon it was ordered that the inspection of the same be granted unto the counsel for the defendants.
The proceedings were adjourned before this court from time to time, and on the 15th day of November, 1965, this court felt that there was sufficient evidence to warrant the retention of the indictments and denied the motion to dismiss.
Thereafter, motions were made for a bill of particulars which the court granted. In fact, these motions were made December 17 of that same year. The demands for a bill of particulars contained nine requests, three of which were furnished by the District Attorney, namely, as to the place where the alleged crime was committed which stated that it was in and about a trailer owned by the defendant located at the Midway Mobile Village located in the Town of Half mo on, Saratoga County, New York. The second item in the bill of particulars alleged the instrumentalities used, and the third furnished the alleged cause of death.
Great stress was laid by the defense counsel that the indictment as to the manslaughter count alleged that it took place on or between January 19, 1965 and January 21, 1965 and that the requirement of the statute that it was done in the heat of passion was a physical impossibility if it occurred between these respective dates.
Upon the return of the motion for a bill of particulars, the District Attorney very candidly stated that that was as specific as he could be as to the time of the occurrence of the alleged crime.
Based upon the bill of particulars, the court again entertained a motion to dismiss the indictments based upon the bill of particulars as furnished, coupled with the reading of the Grand Jury minutes. This court was going to concern itself with the sufficiency of the evidence based upon the Grand Jury minutes and the bill of particulars as furnished, as well as the alleged confession of each of the defendants, and may the court state that the alleged confession was furnished to counsel for the *848 defendants by the District Attorney as the court was going to grant the same.
During the pendency of the proceedings which had been again adjourned from the 3rd day of June, 1966 until the 8th day of July, 1966, due to the illness of this court, a decision was handed down by the United States Supreme Court on the 14th day of June, 1966. The decision appeared in the United States Law Week at 34 L. W. 4521, and was entitled Miranda v. Arizona, together with three other writs. (384 U. S. 436.)
In 1964, the Supreme Court had handed down a decision in Escobedo v. Illinois (378 U. S. 478). This decision dealt with the obtaining of a confession from the defendant. Quoting from the recent Miranda case, at page 440 the Supreme Court stated the following: ‘ We dealt with certain phases of this problem recently in Escobedo v. Illinois, 378 U. S. 478 (1964). There, as in the four cases before us, law enforcement officials took the defendant into custody and interrogated him in a police station for the purpose of obtaining a confession. The police did not effectively advise him of his right to remain silent or of his right to consult with his attorney. Bather, they confronted him with an alleged accomplice who accused him of having perpetrated a murder. When the defendant denied the accusation and said ‘I didn’t shoot Manuel, you did it,’ they handcuffed him and took him to an interrogation room. There, while handcuffed and standing, he was questioned for four hours until he confessed. During this interrogation, the police denied his request to speak to his attorney, and they prevented his retained attorney, who had come to the police station, from consulting with him. At his trial, the State, over his objection, introduced the confession against him. We held that the statements thus made were constitutionally inadmissible.”
After the handing down of the Escobedo decision by the Supreme Court, the court indicated it would formulate guide rules as to the obtaining of a confession, which the court has done in the Miranda case as well as the three others at pages 444-445 of the decision: ‘ ‘ Our holding will be spelled out with some specificity in the pages which follow but briefly stated it is this: the prosecution may not use statements, whether exculpatory or inculpatory, stemming from custodial interrogation of the defendant unless it demonstrates the use of procedural safeguards effective to secure the privilege against self-incrimination. By custodial interrogation, we mean questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any *849 significant way. As for the procedural safeguards to be employed, unless other fully effective means are devised to inform accused persons of their right of silence and to assure a continuous opportunity to exercise it, the following measures are required. Prior to any questioning, the person must be warned that he has a right to remain silent, that any statement he does make may be used as evidence against him, and that he has a right to the presence of an attorney, either retained or appointed. The defendant may waive effectuation of these rights, provided the waiver is made voluntarily, knowingly and intelligently. If, however, he indicates in any manner and at any stage of the process that he wishes to consult with an attorney before speaking there can be no questioning. Likewise, if the individual is alone and indicates in any manner that he does not wish to be interrogated, the police may not question him. The mere fact that he may have answered some questions or volunteered some statements on Ms own does not deprive him of the right to refrain from answering any further inquiries until he has consulted with an attorney and thereafter consents to be questioned.”
It is to be noted in the guide rules heretofore referred to that the accused has the right to the presence of an attorney, either retained or appointed. In connection with the appointment of counsel, if the accused is indigent, he is entitled to counsel being assigned. At pages 472-473 of the Miranda case, as well as four others, the following is stated: “ If an individual indicates that he wishes the assistance of counsel before any interrogation occurs, the authorities cannot rationally ignore or deny his request on the basis that the individual does not have or cannot afford a retained attorney. The financial ability of the individual has no relationship to the scope of the rights involved here. The privilege against self-incrimination secured by the Constitution applies to all individuals. The need for counsel in order to protect the privilege exists for the indigent as well as the affluent. In fact, were we to limit these constitutional rights to those who can retam an attorney, our decisions today would be of little significance. The cases before us as well as the vast majority of confession cases with which we have dealt in the past involve those unable to retain counsel. While authorities are not required to relieve the accused of his poverty, they have the obligation not to take advantage of indigence in the administration of justice. Denial of counsel to the indigent at the time of interrogation while allowing an attorney to those who can afford one would be no more supportable by reason *850 or logic than the similar situation at trial and on appeal struck down in Gideon v. Wainwright, 372 U. S. 335 (1963), and Douglas v. California, 372 U. S. 353 (1963).”
As was stated, this court was going to concern itself with the sufficiency of the evidence based upon the Q-rand Jury minutes and the bill of particulars as furnished, but inasmuch as we are now concerned with the alleged confessions, the court will confine itself to the same. The alleged confessions contain a preamble as to how these defendants were advised, namely, that they were told they had a right to counsel and that they did not have to make any statement and that any statement could be used against them in a criminal action. Admittedly, this is the extent to which these defendants were advised.
Applying the rules as laid down by the Supreme Court of the United States, these confessions fall short of the requirements and particularly as to the right to have present at the time of interrogation counsel, and, also, if indigent, that counsel would be appointed or assigned by the court prior to any questioning, if so desired. Aside from these alleged confessions, there is not a single scintilla of evidence that these defendants committed the crimes as alleged. In fact, there were no witnesses to the alleged crime, and by the way of comment, the confessions are practically exculpatory.
This court wants to point out that the defense counsel, as well as the District Attorney, were extremely diligent throughout the course of the whole proceedings and did so in accordance with the traditions of the Bar.
In the Miranda case (supra) Mr. Chief Justice Warren wrote the majority opinion. There were strong dissents by Mr. Justice Harland, Mr. Justice Stewart and Mr. Justice White. This decision undoubtedly will change the method in procedure of peace officers and investigators. The Escobedo case was the subject of legal debate, and the Miranda case is likewise subject to the same. However, it is the law of the land.
No District Attorney can transcend a case beyond the facts as presented to him. Such is this case. Consequently, the indictment, as to both counts and in all respects, is dismissed.