## DOUGLAS ET AL. *v.* CALIFORNIA.

No. 34.   Argued April 17, 1962.—Restored to the calendar for rear-
gument June 25, 1962.—Reargued January 16, 1963.—
Decided March 18, 1963.

*Marvin M. Mitchelson* and *Burton Marks* reargued the
cause for petitioners.   With them on the briefs were *A. L.
Wirin, Fred Okrand* and *Nanette Dembitz.*

*William E. James,* Assistant Attorney General of Cali-
fornia, and *Jack E. Goertzen,* Deputy Attorney General,
argued the cause for respondent.   With them on the briefs
was *Stanley Mosk,* Attorney General.

MR. JUSTICE DOUGLAS delivered the opinion of the
Court.

Petitioners, Bennie Will Meyes and William Douglas,
were jointly tried and convicted in a California court on
an information charging them with 13 felonies.   A single

354

public defender was appointed to represent them. At the commencement of the trial, the defender moved for a continuance, stating that the case was very complicated, that he was not as prepared as he felt he should be because he was handling a different defense every day, and that there was a conflict of interest between the petitioners requiring the appointment of separate counsel for each of them. This motion was denied. Thereafter, petitioners dismissed the defender, claiming he was unprepared, and again renewed motions for separate counsel and for a continuance. These motions also were denied, and petitioners were ultimately convicted by a jury of all 13 felonies, which included robbery, assault with a deadly weapon, and assault with intent to commit murder. Both were given prison terms. Both appealed as of right to the California District Court of Appeal. That court affirmed their convictions. 187 Cal. App. 2d 802, 10 Cal. Rptr. 188. Both Meyes and Douglas then petitioned for further discretionary review in the California Supreme Court, but their petitions were denied without a hearing.[1] 187 Cal. App. 2d, at 813, 10 Cal. Rptr., at 195. We granted certiorari. 368 U. S. 815.

Although several questions are presented in the petition for certiorari, we address ourselves to only one of them. The record shows that petitioners requested, and were denied, the assistance of counsel on appeal, even though it plainly appeared they were indigents. In denying petitioners' requests, the California District Court of Appeal stated that it had "gone through" the record

---

[1] While the notation of a denial of hearing by the California Supreme Court indicates that only Meyes petitioned that Court for a hearing, and is silent as to Douglas' attempts at further review, the record shows that the petition for review was expressly filed on behalf of Douglas as well. Both Meyes and Douglas, therefore, have exhausted their state remedies and both cases are properly before us. 28 U. S. C. § 1257 (3).

and had come to the conclusion that "no good whatever could be served by appointment of counsel." 187 Cal. App. 2d 802, 812, 10 Cal. Rptr. 188, 195. The District Court of Appeal was acting in accordance with a California rule of criminal procedure which provides that state appellate courts, upon the request of an indigent for counsel, may make "an independent investigation of the record and determine whether it would be of advantage to the defendant or helpful to the appellate court to have counsel appointed. . . . After such investigation, appellate courts should appoint counsel if in their opinion it would be helpful to the defendant or the court, and should deny the appointment of counsel only if in their judgment such appointment would be of no value to either the defendant or the court." *People* v. *Hyde,* 51 Cal. 2d 152, 154, 331 P. 2d 42, 43.

We agree, however, with Justice Traynor of the California Supreme Court, who said that the "[d]enial of counsel on appeal [to an indigent] would seem to be a discrimination at least as invidious as that condemned in *Griffin* v. *Illinois* . . . ." *People* v. *Brown,* 55 Cal. 2d 64, 71, 357 P. 2d 1072, 1076 (concurring opinion). In *Griffin* v. *Illinois,* 351 U. S. 12, we held that a State may not grant appellate review in such a way as to discriminate against some convicted defendants on account of their poverty. There, as in *Draper* v. *Washington, post,* p. 487, the right to a free transcript on appeal was in issue. Here the issue is whether or not an indigent shall be denied the assistance of counsel on appeal. In either case the evil is the same: discrimination against the indigent. For there can be no equal justice where the kind of an appeal a man enjoys "depends on the amount of money he has." *Griffin* v. *Illinois, supra,* at p. 19.

In spite of California's forward treatment of indigents, under its present practice the type of an appeal a person is afforded in the District Court of Appeal hinges

upon whether or not he can pay for the assistance of counsel. If he can the appellate court passes on the merits of his case only after having the full benefit of written briefs and oral argument by counsel. If he cannot the appellate court is forced to prejudge the merits before it can even determine whether counsel should be provided. At this stage in the proceedings only the barren record speaks for the indigent, and, unless the printed pages show that an injustice has been committed, he is forced to go without a champion on appeal. Any real chance he may have had of showing that his appeal has hidden merit is deprived him when the court decides on an *ex parte* examination of the record that the assistance of counsel is not required.

We are not here concerned with problems that might arise from the denial of counsel for the preparation of a petition for discretionary or mandatory review beyond the stage in the appellate process at which the claims have once been presented by a lawyer and passed upon by an appellate court. We are dealing only with the *first appeal,* granted as a matter of right to rich and poor alike (Cal. Penal Code §§ 1235, 1237), from a criminal conviction. We need not now decide whether California would have to provide counsel for an indigent seeking a discretionary hearing from the California Supreme Court after the District Court of Appeal had sustained his conviction (see Cal. Const., Art. VI, § 4c; Cal. Rules on Appeal, Rules 28, 29), or whether counsel must be appointed for an indigent seeking review of an appellate affirmance of his conviction in this Court by appeal as of right or by petition for a writ of certiorari which lies within the Court's discretion. But it is appropriate to observe that a State can, consistently with the Fourteenth Amendment, provide for differences so long as the result does not amount to a denial of due process or an "invidious discrimination." *Williamson* v. *Lee Optical Co.,* 348

U. S. 483, 489; *Griffin* v. *Illinois, supra,* p. 18. Absolute equality is not required; lines can be and are drawn and we often sustain them. See *Tigner* v. *Texas,* 310 U. S. 141; *Goesaert* v. *Cleary,* 335 U. S. 464. But where the merits of *the one and only appeal* an indigent has as of right are decided without benefit of counsel, we think an unconstitutional line has been drawn between rich and poor.

When an indigent is forced to run this gantlet of a preliminary showing of merit, the right to appeal does not comport with fair procedure. In the federal courts, on the other hand, an indigent must be afforded counsel on appeal whenever he challenges a certification that the appeal is not taken in good faith. *Johnson* v. *United States,* 352 U. S. 565. The federal courts must honor his request for counsel regardless of what they think the merits of the case may be; and "representation in the role of an advocate is required." *Ellis* v. *United States,* 356 U. S. 674, 675.[2] In California, however, once the court has "gone through" the record and denied counsel, the indigent has no recourse but to prosecute his appeal on his own, as best he can, no matter how meritorious his case may turn out to be. The present case, where counsel was denied petitioners on appeal, shows that the discrimination is not between "possibly good and obviously bad cases," but between cases where the rich man can require the court to listen to argument of counsel before deciding on the merits, but a poor man cannot. There is lacking

---

[2] "When society acts to deprive one of its members of his life, liberty or property, it takes its most awesome steps. No general re-. spect for, nor adherence to, the law as a whole can well be expected without judicial recognition of the paramount need for prompt, eminently fair and sober criminal law procedures. The methods we employ in the enforcement of our criminal law have aptly been called the measures by which the quality of our civilization may be judged." *Coppedge* v. *United States,* 369 U. S. 438, 449.

that equality demanded by the Fourteenth Amendment where the rich man, who appeals as of right, enjoys the benefit of counsel's examination into the record, research of the law, and marshalling of arguments on his behalf, while the indigent, already burdened by a preliminary determination that his case is without merit, is forced to shift for himself. The indigent, where the record is unclear or the errors are hidden, has only the right to a meaningless ritual, while the rich man has a meaningful appeal.

We vacate the judgment of the District Court of Appeal and remand the case to that court for further proceedings not inconsistent with this opinion.

*It is so ordered.*

MR. JUSTICE CLARK, dissenting.

I adhere to my vote in *Griffin* v. *Illinois,* 351 U. S. 12 (1956), but, as I have always understood that case, it does not control here. It had to do with the State's obligation to furnish a record to an indigent on appeal. There we took pains to point out that the State was free to "find other means of affording adequate and effective appellate review to indigent defendants." *Id.,* at 20. Here California has done just that in its procedure for furnishing attorneys for indigents on appeal. We all know that the overwhelming percentage of *in forma pauperis* appeals are frivolous. Statistics of this Court show that over 96% of the petitions filed here are of this variety.[1] California, in the light of a like experience, has provided that upon the filing of an application for the appointment of counsel the District Court of Appeal shall make "an independent investigation of the record

---

[1] Statistics from the office of the Clerk of this Court reveal that in the 1961 Term only 38 of 1,093 *in forma pauperis* petitions for certiorari were granted (3.4%). Of 44 *in forma pauperis* appeals, all but one were summarily dismissed (2.3%).

and determine whether it would be of advantage to the defendant or helpful to the appellate court to have counsel appointed." *People* v. *Hyde,* 51 Cal. 2d 152, 154, 331 P. 2d 42, 43 (1958). California's courts did that here and after examining the record certified that such an appointment would be neither advantageous to the petitioners nor helpful to the court. It, therefore, refused to go through the useless gesture of appointing an attorney. In my view neither the Equal Protection Clause nor the Due Process Clause requires more. I cannot understand why the Court says that this procedure afforded petitioners "a meaningless ritual." To appoint an attorney would not only have been utter extravagance and a waste of the State's funds but as surely "meaningless" to petitioners.

With this new fetish for indigency the Court piles an intolerable burden on the State's judicial machinery. Indeed, if the Court is correct it may be that we should first clean up our own house. We have afforded indigent litigants much less protection than has California. Last Term we received over 1,200 *in forma pauperis* applications in none of which had we appointed attorneys or required a record. Some were appeals of right. Still we denied the petitions or dismissed the appeals on the moving papers alone. At the same time we had hundreds of paid cases in which we permitted petitions or appeals to be filed with not only records but briefs by counsel, after which they were disposed of in due course. On the other hand, California furnishes the indigent a complete record and if counsel is requested requires its appellate courts either to (1) appoint counsel or (2) make an independent investigation of that record and determine whether it would be of advantage to the defendant or helpful to the court to have counsel appointed. Unlike *Lane* v. *Brown,* decided today, *post,* p. 477, decision in these matters is not placed in the unreviewable discretion

of the Public Defender or appointed counsel but is made by the appellate court itself.[2]

California's concern for the rights of indigents is clearly revealed in *People* v. *Hyde, supra*. There, although the Public Defender had not undertaken the prosecution of the appeal, the District Court of Appeal nevertheless referred the application for counsel and the record to the Los Angeles Bar Association. One of its members reviewed these papers, after which he certified that no meritorious ground for appeal was disclosed. Despite this the California District Court of Appeal made its own independent examination of the record.

There is an old adage which my good Mother used to quote to me, *i. e.*, "People who live in glass houses had best not throw stones." I dissent.

Mr. Justice Harlan, whom Mr. Justice Stewart joins, dissenting.

In holding that an indigent has an absolute right to appointed counsel on appeal of a state criminal conviction, the Court appears to rely both on the Equal Pro-

---

[2] The crucial question here is, of course, the *effectiveness* of the appellate review which was unquestionably provided. In *Lane* v. *Brown, post*, p. 477, the unreviewable decision of the Public Defender precluded any appellate review under Indiana law. As to the fairness and effectiveness of the appellate review here as compared with *Griffin* v. *Illinois*, 351 U. S. 12 (1956), the State conceded the necessity of a transcript for adequate review of the alleged trial errors in that case. *Id.*, at 16. Compare the statement of the District Court of Appeal in affirming here: "Further, the briefs filed by Meyes [which Douglas adopted] conform to the rules in all respects, are well written, present all possible points clearly and ably with abundant citation of pertinent authorities, and were no doubt prepared by one well versed in criminal law and procedure and in brief writing. There was no prejudicial error in not appointing counsel for defendants on the appeal." 187 Cal. App. 2d 802, 812, 10 Cal. Rptr. 188, 195.

tection Clause and on the guarantees of fair procedure inherent in the Due Process Clause of the Fourteenth Amendment, with obvious emphasis on "equal protection." In my view the Equal Protection Clause is not apposite, and its application to cases like the present one can lead only to mischievous results. This case should be judged solely under the Due Process Clause, and I do not believe that the California procedure violates that provision.

## EQUAL PROTECTION.

To approach the present problem in terms of the Equal Protection Clause is, I submit, but to substitute resounding phrases for analysis. I dissented from this approach in *Griffin* v. *Illinois,* 351 U. S. 12, 29, 34–36,[1] and I am constrained to dissent from the implicit extension of the equal protection approach here—to a case in which the State denies no one an appeal, but seeks only to keep within reasonable bounds the instances in which appellate counsel will be assigned to indigents.

The States, of course, are prohibited by the Equal Protection Clause from discriminating between "rich" and "poor" *as such* in the formulation and application of their laws. But it is a far different thing to suggest that this provision prevents the State from adopting a law of general applicability that may affect the poor more harshly than it does the rich, or, on the other hand, from making some effort to redress economic imbalances while not eliminating them entirely.

Every financial exaction which the State imposes on a uniform basis is more easily satisfied by the well-to-do than by the indigent. Yet I take it that no one would dispute the constitutional power of the State to levy a

---

[1] The majority in *Griffin* appeared to rely, as here, on a blend of the Equal Protection and Due Process Clauses in arriving at the result. So far as the result in that case rested on due process grounds, I fully accept the authority of *Griffin.*

uniform sales tax, to charge tuition at a state university, to fix rates for the purchase of water from a municipal corporation, to impose a standard fine for criminal violations, or to establish minimum bail for various categories of offenses. Nor could it be contended that the State may not classify as crimes acts which the poor are more likely to commit than are the rich. And surely, there would be no basis for attacking a state law which provided benefits for the needy simply because those benefits fell short of the goods or services that others could purchase for themselves.

Laws such as these do not deny equal protection to the less fortunate for one essential reason: the Equal Protection Clause does not impose on the States "an affirmative duty to lift the handicaps flowing from differences in economic circumstances." [2] To so construe it would be to read into the Constitution a philosophy of leveling that would be foreign to many of our basic concepts of the proper relations between government and society. The State may have a moral obligation to eliminate the evils of poverty, but it is not required by the Equal Protection Clause to give to some whatever others can afford.

Thus it should be apparent that the present case, as with *Draper* v. *Washington, post,* p. 487, and *Lane* v. *Brown, post,* p. 477, both decided today, is not one properly regarded as arising under this clause. California does not discriminate between rich and poor in having a uniform policy permitting everyone to appeal and to retain counsel, and in having a separate rule dealing *only* with the standards for the appointment of counsel for those unable to retain their own attorneys. The sole classification established by this rule is between those cases that are believed to have merit and those regarded as frivolous. And, of course, no matter how far the state rule might go

---

[2] *Griffin* v. *Illinois, supra,* at 34 (dissenting opinion of this writer).

in providing counsel for indigents, it could never be expected to satisfy an affirmative duty—if one existed—to place the poor on the same level as those who can afford the best legal talent available.

Parenthetically, it should be noted that if the present problem may be viewed as one of equal protection, so may the question of the right to appointed counsel at trial, and the Court's analysis of that right in *Gideon* v. *Wainwright, ante,* p. 335, decided today, is wholly unnecessary. The short way to dispose of *Gideon* v. *Wainwright,* in other words, would be simply to say that the State deprives the indigent of equal protection whenever it fails to furnish him with legal services, and perhaps with other services as well, equivalent to those that the affluent defendant can obtain.

The real question in this case, I submit, and the only one that permits of satisfactory analysis, is whether or not the state rule, as applied in this case, is consistent with the requirements of fair procedure guaranteed by the Due Process Clause. Of course, in considering this question, it must not be lost sight of that the State's responsibility under the Due Process Clause is to provide justice for all. Refusal to furnish criminal indigents with some things that others can afford may fall short of constitutional standards of fairness. The problem before us is whether this is such a case.

### DUE PROCESS.

It bears reiteration that California's procedure of screening its criminal appeals to determine whether or not counsel ought to be appointed denies to no one the right to appeal. This is not a case, like *Burns* v. *Ohio,* 360 U. S. 252, in which a court rule or statute bars all consideration of the merits of an appeal unless docketing fees are prepaid. Nor is it like *Griffin* v. *Illinois, supra,* in which the State conceded that "petitioners needed a transcript

in order to get adequate appellate review of their alleged trial errors." 351 U. S., at 16. Here it is *this* Court which finds, notwithstanding California's assertions to the contrary, that as a matter of constitutional law "adequate appellate review" is impossible unless counsel has been appointed. And while *Griffin* left it open to the States to devise "other means of affording adequate and effective appellate review to indigent defendants," 351 U. S., at 20, the present decision establishes what is seemingly an absolute rule under which the State may be left without any means of protecting itself against the employment of counsel in frivolous appeals.[3]

It was precisely towards providing adequate appellate review—as part of what the Court concedes to be "California's forward treatment of indigents"—that the State formulated the system which the Court today strikes down. That system requires the state appellate courts to appoint counsel on appeal for any indigent defendant except "if in their judgment such appointment would be of no value to either the defendant or the court." *People* v. *Hyde,* 51 Cal. 2d 152, 154, 331 P. 2d 42, 43. This judgment can be reached only after an independent investigation of the trial record by the reviewing court. And even if counsel is denied, a full appeal on the merits is accorded to the indigent appellant, together with a statement of the reasons why counsel was not assigned. There is nothing in the present case, or in any other case that has been cited to us, to indicate that the system has resulted in injustice. Quite the contrary, there is every reason to believe that California appellate courts have made a painstaking effort to apply the rule fairly and to live up to the State Supreme Court's mandate. See, *e. g.,* the dis-

---

[3] California law provides that if counsel is appointed on appeal, the court shall fix a reasonable fee to be paid by the State. California Penal Code § 1241. It is of course clear that this Court may not require the State to compel its attorneys to donate their services.

cussion in *People* v. *Vigil,* 189 Cal. App. 2d 478, 480–482, 11 Cal. Rptr. 319, 321–322.

We have today held that in a case such as the one before us, there is an absolute right to the services of counsel at trial. *Gideon* v. *Wainwright, ante,* p. 335. But the appellate procedures involved here stand on an entirely different constitutional footing. *First,* appellate review is in itself not required by the Fourteenth Amendment, *McKane* v. *Durston,* 153 U. S. 684; see *Griffin* v. *Illinois, supra,* at 18, and thus the question presented is the narrow one whether the State's rules with respect to the appointment of counsel are so arbitrary or unreasonable, *in the context of the particular appellate procedure that it has established,* as to require their invalidation. *Second,* the kinds of questions that may arise on appeal are circumscribed by the record of the proceedings that led to the conviction; they do not encompass the large variety of tactical and strategic problems that must be resolved at the trial. *Third,* as California applies its rule, the indigent appellant receives the benefit of expert and conscientious legal appraisal of the merits of his case on the basis of the trial record, and whether or not he is assigned counsel, is guaranteed full consideration of his appeal. It would be painting with too broad a brush to conclude that under these circumstances an appeal is just like a trial.

What the Court finds constitutionally offensive in California's procedure bears a striking resemblance to the rules of this Court and many state courts of last resort on petitions for certiorari or for leave to appeal filed by indigent defendants *pro se.* Under the practice of this Court, only if it appears from the petition for certiorari that a case merits review is leave to proceed *in forma pauperis* granted, the case transferred to the Appellate Docket, and counsel appointed. Since our review is generally discretionary, and since we are often not even given the benefit of a record in the proceedings below, the dis-

advantages to the indigent petitioner might be regarded as more substantial than in California. But as conscientiously committed as this Court is to the great principle of "Equal Justice Under Law," it has never deemed itself constitutionally required to appoint counsel to assist in the preparation of each of the more than 1,000 *pro se* petitions for certiorari currently being filed each Term. We should know from our own experience that appellate courts generally go out of their way to give fair consideration to those who are unrepresented.

The Court distinguishes our review from the present case on the grounds that the California rule relates to "the *first appeal,* granted as a matter of right." *Ante,* p. 356. But I fail to see the significance of this difference. Surely, it cannot be contended that the requirements of fair procedure are exhausted once an indigent has been given one appellate review. Cf. *Lane* v. *Brown, post,* p. 477. Nor can it well be suggested that having appointed counsel is more necessary to the fair administration of justice in an initial appeal taken as a matter of right, which the reviewing court on the full record has already determined to be frivolous, than in a petition asking a higher appellate court to exercise its discretion to consider what may be a substantial constitutional claim.

Further, there is no indication in this record, or in the state cases cited to us, that the California procedure differs in any material respect from the screening of appeals in federal criminal cases that is prescribed by 28 U. S. C. § 1915. As recently as last Term, in *Coppedge* v. *United States,* 369 U. S. 438, we had occasion to pass upon the application of this statute. Although that decision established stringent restrictions on the power of federal courts to reject an application for leave to appeal *in forma pauperis,* it nonetheless recognized that the federal courts could prevent the needless expenditure of public funds by summarily disposing of frivolous appeals. Indeed in some

respects, California has outdone the federal system, since it provides a transcript and an appeal on the merits in *all* cases, no matter how frivolous.

I cannot agree that the Constitution prohibits a State, in seeking to redress economic imbalances at its bar of justice and to provide indigents with full review, from taking reasonable steps to guard against needless expense. This is all that California has done. Accordingly, I would affirm the state judgment.[4]

---

[4] Petitioners also contend that they were denied the effective assistance of counsel at trial. This claim, in my view, is without merit. A reading of the record leaves little doubt that petitioners' dismissal of their appointed counsel and their efforts to obtain a continuance were designed to delay the proceedings and, in all likelihood, to manufacture an appealable issue. Morcover, the trial court acted well within constitutional bounds in denying the claim that there was a conflict of interest between Douglas and Meyes that required a separate appointed attorney for each.