**The People of the State of Illinois, Plaintiff-Appellee, v. Charles Pennington, Defendant-Appellant.**

**Gen. No. 50,173.**

First District, First Division.

September 19, 1966.

Rehearing denied October 11, 1966.

Gerald W. Getty, Public Defender of Cook County, of Chicago (Marshall A. Patner, Steven L. Larson, Frederick F. Cohn and James J. Doherty, Assistant Public Defenders, of counsel), for appellant.

Daniel P. Ward, State's Attorney of Cook County, of Chicago (Elmer C. Kissane and Robert J. Beranek, Assistant State's Attorneys, of counsel), for appellee.

MR. JUSTICE BURMAN delivered the opinion of the court.

Defendant Charles Pennington was indicted in three counts and charged with burglary with intent to commit theft, burglary with intent to commit rape, and rape. After he had pleaded not guilty and waived a jury trial, the defendant was tried and acquitted of the charge of burglary with intent to commit theft, but was convicted of burglary with intent to commit rape and of rape. He was sentenced to terms of eight to fifteen years in

the penitentiary on each of the two convictions, the sentences to run concurrently.

On appeal, the defendant contends that, (1) the State failed to prove that the act of sexual intercourse was committed by force and against the will of the prosecutrix; (2) the identification of the defendant as the attacker was not established beyond a reasonable doubt; and (3) he was denied a fair trial because before the trial the judge was informed by the State as to the existence and result of certain medical tests made upon the prosecutrix on the morning in question.

The prosecutrix testified that on May 20, 1964, she resided with her husband in a four-room basement apartment in Chicago. After her husband had left for work about 3:30 a. m. that morning, the prosecutrix returned to bed. She was awakened about 4:45 a. m. by a man who was attempting to remove her pajama bottoms. She testified that it was then daylight in the room, and that she recognized the attacker as the defendant, who was caretaker of the building, lived in the room adjoining her apartment, and had visited the prosecutrix and her husband many times. She further testified: "When I woke up I screamed and he had something shiny in his hand. He put it around my neck, and told me don't holler, he didn't want to hurt me. Then we struggled. He finished taking off the bottom of my pajamas." The attacker then had sexual intercourse with the prosecutrix. She testified that immediately thereafter she put on her coat and ran to her sister's home a few doors away. The police were summoned, and the prosecutrix told them that her attacker was the defendant, giving his name, his description, and a description of what he was wearing. The police found the defendant sleeping fully clothed in his room. He was dressed as the prosecutrix had described. The prosecutrix was taken to Mount Sinai Hospital, where a vaginal smear examination was performed with a positive result. The

parties stipulated that the doctor who performed the examination would have so testified. The prosecutrix testified that on the day and in the evening which preceded this examination she had not had sexual intercourse with her husband.

The prosecutrix also related that the door between her apartment and the defendant's room was locked on the morning of the incident, but that one of her living room windows was not locked because the defendant, as caretaker, had not yet installed the lock.

The defendant testified in his own behalf that on the morning of May 20, 1964, he left his place of employment at about 1:45 a. m., receiving a ride part of the distance to his home, and then waited for a bus. He said he arrived home about 4:15 or 4:30 a. m., whereupon he went to sleep fully dressed, and remained asleep until awakened by the police. He testified that the clothes which the prosecutrix had described and which he was wearing when arrested were the only ones he owned at that time. He denied having sexual intercourse with the prosecutrix on that morning or any other time, but charged that she previously had made sexual advances toward him.

██  Defendant's primary contention is that the State failed to prove beyond a reasonable doubt that the attacker used a degree of force sufficient to sustain a conviction for rape. The statute requires the State to show that the defendant had, ". . . sexual intercourse with a female, not his wife, by force and against her will. . . . "  (Ill Rev Stats, c 38, § 11–1(a)  (1963)). The testimony of the prosecutrix, if believed, provides ample proof of the use of force by her attacker and of the fact that the intercourse was against her will. She stated that the attacker held something shiny in his hand, which he held behind her neck during the act; that she screamed once; that the attacker warned her not to "holler" because he did not want to hurt her;

that she struggled with the man; and that after the act she immediately sought help.

█ Defendant contends, however, that the prosecutrix's testimony is improbable and unconvincing, and without corroboration is not sufficient to sustain his conviction. He draws to our attention the fact that while the prosecutrix described to the police in detail the clothing worn by her assailant, she was unable to identify the shiny object which he held; and that no weapon was ever found. In view of her testimony that the shiny object was placed behind her neck, and considering her probable state of extreme fear at the time of the act, we think it understandable that she was unable to identify the object. Defendant also points out that there was no evidence of bruises or other injuries to the prosecutrix; that the State did not introduce any torn clothing into evidence; and that according to the prosecutrix's own testimony the defendant was able to subdue her with just one hand. All these arguments are directed to the credibility of the prosecutrix and of the defendant, and therefore we will not disturb the findings of the trial judge unless it is plainly apparent that an injustice has been done or that a reasonable doubt of guilt exists. People v. Hyman, 24 Ill2d 205, 208, 181 NE2d 65. Such is not the case here.

██ Defendant's contention that the prosecutrix's uncorroborated testimony cannot sustain his conviction is also without merit. First of all, our Supreme Court held in People v. Jenkins, 24 Ill2d 208, 181 NE2d 79, that immediate complaint by the prosecuting witness to the police constituted corroboration of the prosecutrix's testimony of forcible rape. Secondly, the positive report of the doctor performing the vaginal smear examination also corroborates her testimony. Finally, our Supreme Court has held that where the testimony of the prosecuting witness is clear and convincing, there is no need for corroboration of that testimony. People v. Mack, 25 Ill2d 416, 420, 185 NE2d 154.

In People v. Faulisi, 25 Ill2d 457, 185 NE2d 211, cited by defendant, the court reversed a conviction for rape, holding that the testimony of the complaining witness as to her attacker's use of force and her resistance was not sufficiently convincing to lead to an abiding conviction of the defendant's guilt; and that the record did not contain the corroborating evidence required under such circumstances. That case is clearly distinguishable on the facts from the case at bar. In Faulisi, the court pointed out that there was no evidence of the use of any weapon by the attacker, and emphasized the prosecutrix's failure to cry for help and the fact that neither the prosecutrix nor her husband saw fit to call the police.

In People v. Qualls, 21 Ill2d 252, 171 NE2d 612, cited by defendant, our Supreme Court reversed a conviction for rape, holding: "We are constrained to say, after a careful reading of the entire record, that the testimony of the prosecuting witness lacks verisimilitude. In such instance the evidence of a prosecutrix should be corroborated by some other testimony, fact or circumstance. (People v. Hiller, 7 Ill2d 465, 131 NE2d 25.) There is no corroboration of the material elements of force, and lack of consent. The prosecuting witness testified that she was afraid, but her actions belied her statements. At no time did she make any outcry." (21 Ill2d at 257). The court went on to enumerate circumstances in that case which cast significant doubt upon the prosecutrix's claim that she was afraid, including chances to call for help and to escape. No such opportunities were presented in the case at bar; and as pointed out above the prosecutrix's testimony was corroborated by the fact that she immediately sought help, as well as by the doctor's report.

■ Defendant's next contention is that his identification as the attacker was not proved beyond a reasonable doubt. In view of the testimony that the prosecutrix knew the defendant and that the room was lighted by

daylight, taken with the fact that the prosecutrix's description to the police of her attacker's clothing matched those worn by the defendant, we feel the trial judge was justified in finding that the identification of the defendant as the attacker was proved beyond a reasonable doubt.

■ The final contention made by the defendant is that he was denied a fair trial because the State informed the court, prior to the trial, of the existence and result of a physician's report which was unfavorable to the defendant's case. Certain remarks made by the trial judge at the commencement of the trial would suggest that he was aware that a vaginal smear examination was made upon the prosecutrix, and that the result was positive. Later in the trial, however, counsel for the defendant stipulated that if the doctor who performed the examination were produced, he would testify as to the examination and its positive result. He also agreed to the admission into evidence of the report of that examination. Under these circumstances, we fail to see how the defendant could have been prejudiced even if the trial judge did have prior knowledge of these facts. In the cases cited by the defendant in support of this contention, the decisions clearly rested at least in part upon matters within the knowledge of the trial judge, but not part of the record. Those cases are not applicable here, where the same information was introduced into evidence.

The judgment of the Criminal Division of the Circuit Court of Cook County is affirmed.

Judgment affirmed.

KLUCZYNSKI, P. J. and MURPHY, J., concur.