UNITED STATES of America ex rel.
Charles PENNINGTON, Petitioner-
Appellant,

v.

Frank J. PATE, Warden, Illinois State
Penitentiary, Respondent-Appellee.

No. 17018.

United States Court of Appeals
Seventh Circuit.

April 17, 1969.

Joseph N. Morency, Jr., Charles Pennington, Chicago, Ill., for appellant.

William G. Clark, Atty. Gen., State of Ill., Thomas E. Brannigan, Asst. Atty. Gen., Chicago, Ill., for appellee, John J. O'Toole, Asst. Atty. Gen., of counsel.

Before CASTLE, Chief Judge, SWYGERT and KERNER, Circuit Judges.

SWYGERT, Circuit Judge.

This case presents the question whether the denial by the Supreme Court of Illinois of the request of petitioner, Charles Pennington, for counsel to represent him on appeal from an adverse decision of the Illinois Appellate Court was a violation of the equal protection and due process clauses of the fourteenth amendment. This matter is before us on appeal from the district court's denial of Pennington's petition for a writ of habeas corpus.

On May 20, 1964 Charles Pennington was arrested on the charges of burglary with the intent to commit theft, burglary with the intent to commit rape, and rape. A bench trial in the Criminal Division of the Circuit Court of Cook County, Illinois resulted in the conviction of Pennington on the burglary with intent to commit rape and rape charges. He was sentenced to serve concurrent terms of eight to fifteen years on each charge. Pennington, represented by the Cook County Public Defender, appealed to the Appellate Court of Illinois, but his con-

viction was affirmed. People v. Pennington, 75 Ill.App.2d 62, 220 N.E.2d 879 (1966).

Pennington attempted to appeal to the Illinois Supreme Court by filing a motion for leave to proceed as a poor person and for appointment of counsel to represent him in that court. On January 11, 1967 the Clerk of the Supreme Court notified the petitioner that leave to proceed as a poor person was granted, but that the request for the appointment of counsel had been denied. It is denial of counsel at this stage of the appellate process which is alleged to be violative of equal protection and due process.

Subsequent to the Illinois Supreme Court's denial of his motion for appointment of counsel, the petitioner filed a pro se brief and abstract of the record. On April 28, 1967 the Illinois Supreme Court ordered that the appeal be dismissed:

> On this direct appeal from the Appellate Court it is argued that the indictment was insufficient and that the evidence was insufficient to establish the defendant's guilt. These contentions present no substantial constitutional question and it is clear that no such question arose for the first time in the Appellate Court. On the court's own motion the appeal is dismissed.

■■ The first contention raised is that Illinois deprived the indigent petitioner Pennington of the equal protection of its laws when the Illinois Supreme Court denied him the benefit of counsel on his appeal which was taken under the established appellate procedure generally available in that state. Under Illinois court procedure, the only method of review in a criminal case in which judgment was entered is by appeal. Ill.Sup. Ct. Rule 602, Ill.Rev.Stat.1967, c. 110A, § 602. Illinois Supreme Court Rule 603 provides for direct appeals to the Illinois Supreme Court from final judgments of the Circuit Court in cases involving a question arising under the federal or state constitution and in appeals by the defendant from sentence in capital cases. There is no question that in such appeals the defendant has an absolute right to counsel before the Illinois Supreme Court. Douglas v. California, 372 U.S. 353, 83 S.Ct. 814, 9 L.Ed.2d 811 (1963); Milani v. Illinois, 386 U.S. 12, 87 S.Ct. 12, 17 L.Ed.2d 702 (1967).

■ Criminal appeals in any other posture must first be taken from the Circuit Court to the Illinois Appellate Court. It was this form of appellate process which was appropriate for the facts here presented. Once the first appeal has been decided by the Appellate Court, an appeal as a matter of right exists only if the requirements of Supreme Court Rule 317 are met, namely, if a question under the federal or state constitution arises for the first time in and as a result of the action of the Appellate Court.[1] All other appeals, which includes the one before us, fall within the ambit of Illinois Supreme Court Rule 315.[2] That rule provides that such ap-

1. Rule 317 provides:

Appeals from the Appellate Court shall lie to the Supreme Court as a matter of right in cases in which a question under the constitution of the United States or of this state arises for the first time in and as a result of the action of the Appellate Court. The appeal shall be initiated by filing a petition in the form prescribed by rule 315, except that (a) the petition shall be entitled "Petition for Appeal as a Matter of Right"; (b) item (1) of the petition shall state that the appeal is taken as a matter of right and may pray in the alternative for leave to appeal; and (c) item (5) shall contain

argument as to why appeal to the Supreme Court lies as a matter of right and may also contain argument as to why in the alternative leave to appeal should be allowed as a matter of sound judicial discretion. In other respects the procedure is governed by rule 315. If the Court allows the petition, excerpts from record or an abstract and briefs shall be filed as provided in the case of appeal by leave under rule 315.

2. Rule 315 provides in part:

(a) *Petition for Leave to Appeal; Grounds.* A petition for leave to appeal to the Supreme Court from the Appellate

peals are within the "sound judicial discretion" of the Supreme Court. The only clues which the rule gives to indicate the character of the reasons which may persuade the court to invoke its discretion are that the general importance of the question presented and the existence of a conflict between the decision sought to be reviewed and a decision of the Supreme Court or another division of the Appellate Court. The precise context in which the alleged unconstitutional denial of counsel occurred in the instant case was when the Illinois Supreme Court refused to appoint counsel to aid the petitioner in the perfection of his Rule 315 appeal.

Petitioner asserts a two-pronged argument in the equal protection area. First, he claims that the denial of counsel was a serious handicap to an indigent like himself in that he was not fully informed as to the difference between Rule 315 and Rule 317 appeals, that his brief and abstract show that he was unable to make a lawyerlike showing that the court should exercise its discretion, and that he was unable to evaluate the legal significance of the Illinois Appellate Court's decision. Secondly, the petitioner asserts that the prior case law requires us to hold that the denial of counsel at this stage of the direct appeal process is reversible error.

The petitioner places great reliance on the transcript and filing fee cases such as Griffin v. Illinois, 351 U.S. 12, 76 S.Ct. 585, 100 L.Ed. 891 (1956), and Burns v. Ohio, 360 U.S. 252, 79 S.Ct. 1164, 3 L.Ed.2d 1209 (1959). Although it is true that the *Burns* decision extends *Griffin* rights to indigent petitioners beyond the first level of appeal and also applies these rights to dis-

cretionary appeal procedures, we read these cases as requiring a constitutional right of free and equal access to any court. It was as a result of the holdings in these cases that the Illinois Supreme Court was required to allow Pennington to proceed as a poor person without paying the requisite filing fee or independently procuring a transcript of the proceedings below.

We consider, however, Douglas v. California, 372 U.S. 353, 83 S.Ct. 814, 9 L.Ed.2d 811 (1963), the most significant precedent on the right-to-counsel question. *Douglas* on its facts dealt with right to counsel at the first appeal when that appeal existed as a matter of right. The Supreme Court explicitly refused to decide the question which is now before us:

> We are not here concerned with problems that might arise from the denial of counsel for the preparation of a petition for discretionary or mandatory review beyond the stage in the appellate process at which the claims have once been presented by a lawyer and passed upon by an appellate court. We are dealing only with the *first appeal*, granted as a matter of right to rich and poor alike * * * from a criminal conviction. We need not now decide whether California would have to provide counsel for an indigent seeking a discretionary hearing from the California Supreme Court after the District Court of Appeal had sustained his conviction * * *, or whether counsel must be appointed for an indigent seeking review of an appellate affirmance of his conviction in this Court by appeal as of right or by petition for a writ of certiorari which lies within the Court's discretion. But

Court may be filed in any case not appealable from the Appellate Court as a matter of right. Whether such a petition will be granted is a matter of sound judicial discretion. The following, while neither controlling nor fully measuring the court's discretion, indicate the character of reasons which will be considered: the general importance of the question

presented; the existence of a conflict between the decision sought to be reviewed and a decision of the Supreme Court, or of another division of the Appellate Court; the need for the exercise of the Supreme Court's supervisory authority; and the final or interlocutory character of the judgment sought to be reviewed.

it is appropriate to observe that a State can, consistently with the Fourteenth Amendment, provide for differences so long as the result does not amount to a denial of due process or an 'invidious discrimination.' Williamson v. Lee Optical Co., 348 U.S. 483, 489 [75 S.Ct. 461, 465, 99 L.Ed. 563]; Griffin v. Illinois * * *. Absolute equality is not required; lines can be and are drawn and we often sustain them. See Tigner v. Texas, 310 U.S. 141 [60 S.Ct. 879, 84 L.Ed. 1124]; Goesaert v. Cleary, 335 U.S. 464 [69 S.Ct. 198, 93 L.Ed. 163]. But where the merits of *the one and only appeal* an indigent has as of right are decided without benefit of counsel, we think an unconstitutional line has been drawn between rich and poor. *Id.* at 356–357, 83 S.Ct. at 816.

In light of the Supreme Court's explicit refusal in *Douglas* to extend the right of counsel to the second appeal stage, we are unwilling to hold here that Pennington has been denied the equal protection of law.

We find support for our decision in the present practice of the United States Supreme Court with regard to petitions for writs of certiorari. The United States Supreme Court's disposition of a petition for a writ of certiorari is as fully discretionary as the Illinois Supreme Court's decision to grant a Rule 315 appeal. Both determinations are made after one appeal as of right has occurred. If we were to hold for the petitioner here, we would be saying a fortiori that the Supreme Court's present practice of not granting counsel for the purpose of preparing certiorari petitions is contrary to equal protection under the Constitution. This we are unwilling to do.

A second reason for not imposing on the Illinois Supreme Court the duty of providing counsel for every petitioner seeking a discretionary appeal is that, if in fact a petitioner, such as Pennington, does have a meritorious constitutional claim which he has heretofore failed to assert, this claim has either been waived and so could not under any circumstances be presented to the Illinois Supreme Court on appeal[3] or it concerns such a fundamental right that an adequate remedy still exists in the form of the Illinois Post-Conviction Hearing Act, Ill.Rev.Stat. ch. 38 § 122–1 et seq. (1967). Concerning the post-conviction hearing procedure, the Illinois Supreme Court has held that a petitioner in such a proceeding is entitled to the assistance of a lawyer in the presentation of his original petition or in the preparation of an amended petition if necessary. People v. Wilson, 39 Ill.2d 275, 235 N.E.2d 561 (1968).

A further reason for not placing the burden on the Illinois court system of providing counsel to appellants, such as the petitioner, is our recognition of the practical problems which would be involved in the implementation of such a right. We are not unmindful of Illinois' experience in implementing the right-to-counsel requirements of *Gideon* and *Douglas*. Institutional limitations are also important considerations. We think that the distinction between equality of access to the courts as required in *Griffin* and *Burns* and the right to appointment of counsel is meaningful. This distinction has the practical merit that the states are institutionally better prepared to waive fees and costs for the poor than they are to provide free counsel.

In conclusion, we note that at two stages of the Illinois proceeding here, trial and first appeal, no constitutional questions were raised or decided and no errors were found. We are unable to find any denial of equal protection.

The petitioner's counsel has invited our attention to the case of La Faver v. Turner, 231 F.Supp. 895, 896 (D.Utah 1964), which he asserts has extended *Douglas* to the facts before us. In that case, La Faver filed a petition for a writ of habeas corpus in the state dis-

3. *See, e. g.,* People v. Johnson, 38 Ill.2d 399, 231 N.E.2d 447 (1967).

trict court asserting that his earlier guilty plea to a robbery charge had been coerced through threats of bodily harm. After a denial of the petition by the state district court, the lawyer who represented the petitioner filed a notice of appeal in the Utah Supreme Court.[4] Before proceeding further, however, the court-appointed counsel withdrew from the case. Nonetheless, the Utah Supreme Court failed to appoint new counsel and dismissed the appeal without consideration. We perceive no controlling significance in that decision since requiring appointment of new counsel in such a situation as the United States District Court subsequently did in that case is required by *Douglas* and *Milani*.

Petitioner's second claim is that the failure to appoint counsel for him on appeal was a violation of due process. We agree with the petitioner that an indigent's right to counsel has been augmented significantly since the court decided *Douglas*. Escobedo v. Illinois, 378 U.S. 478, 84 S.C. 1758, 12 L.Ed.2d 977 (1964); Entsminger v. Iowa, 386 U.S. 748, 87 S.Ct. 1402, 18 L.Ed.2d 501 (1967); Mempa v. Rhay, 389 U.S. 128, 88 S.Ct. 254, 19 L.Ed.2d 336 (1967). Nonetheless, in light of our discussion above and especially on account of the Supreme Court's practice in the analogous petition for writ of certiorari procedure, we are unable to find denial of due process.

The court wishes to thank Mr. Joseph N. Morency, Jr. of the Illinois Bar for his thorough and able service as court-appointed counsel in this case.

The judgment of the district court is affirmed.

KERNER, Circuit Judge (concurring).

I concur in the result reached by my brethren.

The federal courts are being innundated by an ever-increasing number of habeas corpus and related petitions under 28 U.S.C. §§ 2254 and 2255. I feel that if more careful examination were made of each case on all phases of its direct appeal, fewer corrections of error would be needed in the post conviction review process. The assistance of competent counsel is essential to the full examination of a conviction so as to raise all possible appealable errors during the direct appeal.

Illinois provides for appointed counsel for indigent defendants both at trial and for the first appeal, whether to the Illinois Appellate Court or the Illinois Supreme Court. Since the first appeal is a matter of right, such appointment is required by Douglas v. California, 372 U.S. 353, 83 S.Ct. 814, 9 L.Ed.2d 811 (1963). However, if the first appeal is to the Illinois Appellate Court, counsel is not required to be appointed to prosecute an appeal to the Illinois Supreme Court.

The appeal to the Illinois Supreme Court may be a matter of right under Rule 317 or a matter of discretion under Rule 315. I regard the prosecution of this appeal as a "crucial stage" in the criminal process which requires the appointment of counsel. McConnell v. Rhay, 393 U.S. 2, 89 S.Ct. 32, 21 L.Ed. 2d 2 (1968). This is especially so since the absence of the advice of counsel may cause the prisoner, unlearned in the law, to waive constitutional errors by failing to properly raise them in a petition for review under Rule 317. In fact, the probability is that he will not even recognize such errors.

Also, I agree with the petitioner that it is beyond reason to expect the average layman-prisoner to make a showing as to why the Illinois Supreme Court should accept an appeal on the basis of the general importance of the decision below, much less to show a conflict between Illinois Appellate Court Districts, under

---

4. In habeas corpus cases, the district court in Utah has the power to issue such writs. Utah Code, title 78, ch. 2 § 3 (1953). An appeal from a denial of the writ is taken to the second level court which is the highest court in the state, the Utah Supreme Court. Utah Code, title 78, ch. 2 § 2 (1953).

Rule 315. However, such issues can and should be raised by counsel in the briefs before the Appellate Court. Thus, whether or not they are dealt with by the opinion of that court, they will usually be part of the record before the Illinois Supreme Court for its consideration even on a prisoner's *pro se* petition for review. I feel that we are justified in assuming that the Illinois Supreme Court will conscientiously review the record and consider the arguments raised in the Appellate Court briefs.

I feel my brethren have read *Douglas* too narrowly. Since new constitutional error may arise in the Appellate Court, from which an appeal arises as a matter of right, I feel that a further appeal to the Illinois Supreme Court would merely be another portion of the "one and only appeal an indigent has as of right" under *Douglas*. Id. at 357, 83 S.Ct. at 816.

As to the institutional difficulties involved in implementing such a decision, having been Governor of Illinois when the *Gideon* and *Douglas* decisions were rendered and having dealt with the budgetary and manpower problems involved, I, perhaps more then my brethren, am well aware of the practical problems in this area. Yet, I am unwilling to sacrifice a major constitutional right solely because its implementation may be difficult and expensive.

My concurrence in the result is based on my belief that prisoner-petitioners in Illinois are not prejudiced by the failure to supply counsel here due to the existence of Illinois' post-conviction hearing procedures. As noted by the majority, it has been held that counsel must be appointed for indigents to aid in the preparation and presentation of their first post-conviction petitions. It is my understanding that the review afforded by this procedure is sufficient to review any significant and meritorious claims of constitutional error in any of the prior proceedings. Until we are shown a case in which this procedure is inadequate or unable to review such constitutional questions which could have been presented in an appeal of right under Rule 317, I will regard the procedure as a sufficient substitute for the appointment of counsel to assist in petitions for review under Rule 317.