Claude Franklin MOFFITT, Appellant,

v.

Major Fred R. ROSS and State of
North Carolina, Appellees.

Claude F. MOFFITT, Appellant,

v.

Major Fred R. ROSS and State of
North Carolina, Appellees.

Nos. 72-1720, 72-2480.

United States Court of Appeals,
Fourth Circuit.

Argued May 8, 1973.

Decided Aug. 29, 1973.

Certiorari Granted Jan. 7, 1974.
See 94 S.Ct. 864.

Thomas B. Anderson, Jr., Durham, N. C. [Court-appointed counsel] (Loflin, Anderson, Loflin & Goldsmith, Durham, N. C., on brief), for appellant Claude F. Moffitt.

Jacob L. Safron, Asst. Atty. Gen. (Robert Morgan, Atty. Gen., Richard N. League, Asst. Atty. Gen., on brief), for appellees Major Fred R. Ross and State of North Carolina.

Before HAYNSWORTH, Chief Judge and CRAVEN and BUTZNER, Circuit Judges.

HAYNSWORTH, Chief Judge:

We are met with the questions reserved by the Court in Douglas v. California, 372 U.S. 353, 83 S.Ct. 814, 9 L. Ed.2d 811.

In *Douglas*, the Supreme Court held that an indigent, convicted of a felony, was entitled to the assistance of assigned counsel in presenting his appeal to the state's intermediate appellate court. It reserved the question of entitlement to assigned counsel in subsequent permissive review proceedings and limited its holding to counsel in *"the one and only appeal* an indigent has as of right" [emphasis in original]. These cases present the questions whether, after affirmance of a felony conviction by a state's intermediate appellate court, an indigent defendant is entitled to the as-

sistance of assigned counsel in seeking further permissive review (1) in the state's highest court, and (2) in the Supreme Court of the United States. We conclude that he is, for, in this context, we find no basis for differentiation between appeals as of right and permissive appeals or between first appeals and second or third stage review.

### No. 72–2480

The first of Moffitt's two convictions of forgery and uttering forged instruments was had in Mecklenburg County, North Carolina. With the assistance of appointed counsel, he took an appeal to the North Carolina ·Court of Appeals, which affirmed the conviction. North Carolina v. Moffitt, 9 N.C.App. 694, 177 S.E.2d 324. His lawyer then informed Moffitt that the court would not appoint him to prepare and file a petition for a writ of certiorari in the North Carolina Supreme Court. In his letter to Moffitt, he stated that he had sought such an appointment from the Superior Court, but that it had been refused on the ground that assignment of counsel was not required to handle an application to the North Carolina Supreme Court for permissive review.

Moffitt alleges he then sought to prepare and file such an application himself, but it was denied because of tardiness.

After an aborted federal petition, Moffitt exhausted his state postconviction remedies and then sought a writ of habeas corpus in the District Court for the Western District of North Carolina on the ground, among others, that refusal to provide assigned counsel to prepare and file an application for a writ of certiorari in the North Carolina Supreme Court was a denial of a federal constitutional right to counsel.

### No. 72–1720

Moffitt's second conviction was in Guilford County, North ·Carolina, where he was represented by a lawyer in the office of the Greensboro Public Defender. With the assistance of that lawyer, he took an appeal to the North Carolina Court of Appeals, which affirmed the conviction. North Carolina v. Moffitt, 11 N.C.App. 337, 181 S.E.2d 184. In this case the Public Defender was authorized to prepare and file an application for a writ of certiorari in the Supreme Court of North Carolina. He did so, and the Attorney General countered with a motion to dismiss on the ground that no substantial constitutional question was presented. The motion was granted on that ground. North Carolina v. Moffitt, 279 N.C. 396, 183 S.E.2d 247.

Moffitt unsuccessfully petitioned the Superior Court and the North Carolina Court of Appeals for the provision of legal assistance in preparing and filing a petition for a writ of certiorari in the Supreme Court of the United States. Denied that assistance, he then sought habeas relief in the District Court for the Middle District of North Carolina. Denied relief there, his appeal presents the question of his constitutional right to the assistance of counsel in seeking a writ of certiorari from the Supreme Court of the United States to the Supreme Court of North Carolina.

### I

In North Carolina, there is an appeal as of right from the Superior Court to the North Carolina Supreme Court in criminal cases, if the sentence is death or life imprisonment. N.C.G.S. § 7A–27(a). In all other criminal cases such as these, there is an appeal as of right from the Superior Court to the North Carolina Court of Appeals. N.C.G.S. § 7A–27(b). There is an appeal of right from the Court of Appeals to the Supreme Court of North Carolina only if the case involves a substantial question arising under the Constitution of the United States or under the Constitution of North Carolina, and in other cases if one of the judges of the Court of Appeals has dissented. N.C.G.S. § 7A–30.· In all other cases, such as these, there is only a discretionary right of review by the Supreme Court of North Carolina of

judgments of the North Carolina Court of Appeals. N.C.G.S. § 7A–31.

By statute, North Carolina has provided for the assignment of a lawyer to represent an indigent on "[d]irect review of any judgment or decree, including review by the United States Supreme Court of final judgments or decrees rendered by the highest court of North Carolina in which decision may be had." N.C.G.S. § 7A–451(b)(6).

To us, the reasonable interpretation of that statute would provide a statutory right of counsel to Moffitt in each instance in which it was denied. We would read "direct review" of a criminal conviction as including permissive review proceedings in the North Carolina Supreme Court and in the Supreme Court of the United States, but North Carolina, seemingly, and her Attorney General, expressly, interprets the statute as excluding not only collateral civil proceedings but permissive appellate procedures in direct review as well. As construed by the state, "direct review" includes only such appellate procedures as may be taken as a matter of right. Under the state's construction, the statutory obligation was fully performed when Moffitt was provided with legal assistance in taking his two appeals to the North Carolina Court of Appeals.

■ In our habeas jurisdiction, we review only federal constitutional questions. We have no jurisdiction to enforce state statutory rights. For the purposes of these appeals, therefore, we need not pause to determine whether the Attorney General's assertion about the prevailing state construction of the statute is authoritatively supported. Ultimately, of course, whatever our inclination, the authoritative construction of the North Carolina statute would be for the North Carolina courts, but since in this case we have no jurisdiction to enforce statutory rights, we simply lay aside the statute upon the Attorney General's assertion of the prevailing construction in practice without further inquiry as to whether that practice has the authoritative sanction of North Carolina's appellate courts.

Against the background of the statute, however, it is relevant to note that, despite the state's claim that it is not required to provide counsel for permissive appellate procedures, it does so with great frequency. This fact was established by the Assistant Director of North Carolina's Administrative Office of the Courts. It was admitted by counsel for North Carolina during oral argument of these cases. In the Guilford County case, Moffitt, himself, was provided with legal assistance by North Carolina as he sought certiorari in the North Carolina Supreme Court. Counsel for North Carolina could suggest no reason why legal assistance was provided Moffitt in seeking certiorari in the North Carolina Supreme Court in the one case, but not in the other. Inquiry was made of the Assistant Attorney General as to the existence of any guidelines to be followed by state judges in deciding whether or not assigned counsel should be provided to assist indigents in seeking permissive review. He responded that he knew of none.

This record provides an insufficient basis for a finding or a conclusion that North Carolina's administration of her statute works a denial of equal protection of the laws to some indigent appellants. It may not be amiss, however, to note that such a problem may be lurking in this case, for, if judges of courts whose judgments are sought to be reviewed are deciding whether or not to assign counsel to prepare and file an application for permissive review, and there are no standards or guidelines to govern their determination, it may well be that some indigents are denied the assistance of counsel in situations entirely comparable to those in which other indigents are furnished the assistance of counsel.

## II

At the outset we have observed that the Supreme Court in Douglas v. California confined its holding that an indi-

gent had a constitutional right to the assistance of counsel in appellate procedures to appeals which were taken by right. It disclaimed consideration of subsequent permissive appellate procedures. Indeed, no such question was presented in *Douglas,* and it was natural for the Court to limit its holding to the particular question before it.

On principle, however, we can find no logical basis for differentiation between appeals of right and permissive review procedures in the context of the Constitution and the right to counsel.

Discretionary and permissive procedures by which a high appellate court is given the means of control of its own docket have largely been born of necessity in order to permit the highest appellate court to perform its primary and important functions. The certiorari practice in the Supreme Court sprang from such a need. When intermediate courts of appeals have been set up in the more populous states, they have come to relieve the state's highest court of a recognized overburden. The underlying purpose would be thwarted if every losing litigant in the intermediate appellate court had an unconditional right of appeal to the state's highest court. The purpose can be accomplished only if, within statutory limitations, the state's highest court is given the right of selectively choosing to hear only those cases which seem to it to come within its primary purposes and functions.

A conversion by a state from a single tier appellate system to a double tier system, however, does not alter the fact that the state's highest court remains the ultimate arbiter of the rights of its citizens. While the right to appeal to such a court may be qualified and subject to that court's grant of a preliminary petition, the right to apply for such a review may be of great importance to the litigant. Indeed, in the context of constitutional questions arising in criminal prosecutions, permissive review in the state's highest court may be predictably the most meaningful review the conviction will receive.

If, as *Douglas* holds, deprivation of counsel to an indigent appellant seeking to appeal a felony conviction to an intermediate court of appeals so dilutes the quality of justice that it amounts to a deprivation of due process or equal protection, denial of counsel as he seeks access to the state's highest court would seem a similar and comparable deprivation. A defendant with adequate resources to engage counsel has a meaningful right to seek access to the state's highest court. An indigent should be afforded counsel to give him a comparably meaningful right. Deprived of it, it is of little comfort to him that he was afforded legal guidance in an appeal to a subordinate court. Denied the assistance of a competent lawyer, the quality of justice for the indigent has been substantially impaired in comparison with the quality of justice afforded his more affluent brothers.

An indigent defendant is as much in need of the assistance of a lawyer in preparing and filing a petition for certiorari as he is in the handling of an appeal as of right. In many appeals, an articulate defendant could file an effective brief by telling his story in simple language without legalisms, but the technical requirements for applications for writs of certiorari are hazards which one untrained in the law could hardly be expected to negotiate.

> "Certiorari proceedings constitute a highly specialized aspect of appellate work. The factors which [a court] deems important in connection with deciding whether to grant certiorari are certainly not within the normal knowledge of an indigent appellant. Boskey, The Right to Counsel in Appellate Proceedings, 45 Minn.L.Rev. 783, 797 (1961) (footnote omitted)."

It is not only in multi-tiered appellate systems that a state's highest court is given discretionary control of its docket. In Virginia, for instance, review of felony convictions in the Virginia Supreme Court is by a writ of error to the trial Court. Code of Virginia § 19.1–282. Under the Virginia practice, a convicted

criminal defendant may file with the Virginia Supreme Court a petition for a writ of error. As petitions for writs of certiorari to other courts, that court may grant or deny the petition. The cases are not fully briefed or argued, unless the petition for a writ of error is first granted, for the writ is the means by which the case is brought into the Supreme Court of Virginia.[1]

Though Virginia's appellate procedures for the review of felony convictions are equally as permissive as is the review by the Supreme Court of North Carolina of decisions of the North Carolina Court of Appeals, it seems clear to us that a Virginia defendant is as much in need of counsel in seeking access to the Supreme Court of Virginia as is a defendant in another state in which the first and only appeal is one of right. The Virginia Supreme Court does take a substantial number of criminal cases. It takes enough to keep Virginia law current, and quick glances through the books indicate reversals in a substantial number of the cases it takes.

The Virginia Supreme Court, itself, has held that an indigent criminal defendant has a constitutional right to the assistance of assigned counsel as he seeks access to that court. Cabaniss v. Cunningham, 206 Va. 330, 143 S.E.2d 911. We agree that, in an appellate system like Virginia's, the Constitution mandates the assignment of counsel for the assistance of indigents no less than in another state in which the appellate court has no discretionary means of controlling its docket.

For such reasons, we conclude that the differences between appeals as of right and discretionary appeals do not warrant differentiation in constitutional

doctrine. Whether, in order to provide it with means of controlling its docket, review in a particular court has been made permissive or whether initial access to the court is as of right, the convicted felon is equally in need of the aid of counsel. Nor do we think that the fact that Moffitt in these cases, as Douglas in Douglas v. California, had been furnished counsel in an appeal to an intermediate court permits a deprivation of assigned counsel in further proceedings to obtain review in a higher state appellate court. As long as the state provides such procedures and allows other convicted felons to seek access to the higher court with the help of retained counsel, there is a marked absence of fairness in denying an indigent the assistance of counsel as he seeks access to the same court. As Mr. Justice Harlan observed, "Surely, it cannot be contended that the requirements of fair procedure are exhausted once an indigent has been given one appellate review." Douglas v. California, 372 U.S. 353, 366, 83 S.Ct. 814, 821, 9 L.Ed.2d 811 (dissenting opinion).

Three Courts of Appeals have held that the questions reserved in *Douglas* should be answered in the negative. In Pennington v. Pate, 7 Cir., 409 F.2d 757, it was held that Illinois fully discharged its constitutional obligations by providing assigned counsel for an indigent's appeal to an intermediate appellate court and it was not required to provide counsel to assist the indigent as he sought access to the Supreme Court of Illinois. In Peters v. Cox, 10 Cir., 341 F.2d 575, it was held that New Mexico had no obligation to provide an indigent with the assistance of counsel to prepare and file in the Supreme Court of the United States

---

1. By court rule, the Virginia Supreme Court allows limited argument on a petition for a writ of error by the appellant, but not by the appellee. This hearing is before a single Justice, Rules 5:24 and 5:28, or before a panel of three Justices, upon which retired Justices may serve, and frequently do.

In the opinions of the Virginia Supreme Court in criminal cases, there is usually a routine recital of the grant of a writ of error. See, e. g., Delawder v. Virginia, 214 Va. 55, 196 S.E.2d 913; Hewitt v. Virginia, 213 Va. 605, 194 S.E.2d 893; Howell v. Virginia, 213 Va. 590, 194 S.E.2d 758; Huff v. Virginia, 213 Va. 710, 194 S.E.2d 690.

a petition for certiorari to the Supreme Court of New Mexico. See also United States ex rel. Coleman v. Denno, 313 F.2d 457 (2nd Cir., 1963).

We need not quarrel with those cases. What is requisite today may not have been constitutionally requisite ten years ago, or even a few years ago. As our legal resources grow, there is a correlative growth in our ability to implement basic notions of fairness. Few of the concepts of due process entertained today were born full blown. They grew. The transition from Betts v. Brady, 316 U.S. 455, 62 S.Ct. 1252, 86 L.Ed. 1595, to Gideon v. Wainwright, 372 U.S. 335, 83 S. Ct. 792, 9 L.Ed.2d 799, to Argersinger v. Hamlin, 407 U.S. 25, 92 S.Ct. 2006, 32 L.Ed.2d 530, is an example. The Bar is large enough and strong enough now to meet the requirements of *Gideon* and *Argersinger*; it well may not have been even a few years ago.

Yet it is a relatively minor burden we would impose on the Bar by this decision. Once a lawyer has handled one appeal, and is thoroughly familiar with the case, the issues, and the authorities, it is a relatively simple and easy task for him to prepare and file a petition for further discretionary review in a higher appellate court. That is all that is involved in these cases, for the prevailing practice of second tier appellate courts, having a discretionary jurisdiction, has been to appoint counsel for indigents once certiorari has been granted.

If, however, in deference to our brothers of the Courts of Appeals of the Second, Seventh and Tenth Circuits, we notice the possible impact of changing times, the Supreme Court's rationale in *Douglas* plainly seems to require the result we reach. The majority opinion talks in terms of equality. If the holding be grounded on the equal protection clause, inequality in the circumstances of these cases is as obvious as it was in the circumstances of *Douglas*.[2] If the holding in *Douglas* were grounded on the due process clause, and Mr. Justice Har-

lan in dissent thought the discourse should have been in those terms, due process encompasses elements of equality. There simply cannot be due process of the law to a litigant deprived of all professional assistance when other litigants, similarly situated, are able to obtain professional assistance and to be benefited by it. The same concepts of fairness and equality, which require counsel in a first appeal of right, require counsel in other and subsequent discretionary appeals.

### III

What we have said about the Mecklenburg case and Moffitt's right to counsel while seeking access to the Supreme Court of North Carolina also applies to the Guilford case and his right to assistance of counsel in seeking access to the Supreme Court of the United States, provided he raised a federal question appropriate for review in the Supreme Court of the United States. We have had no opportunity to examine the papers filed in the North Carolina Supreme Court in that case, so the Guilford County case will be remanded to the District Court with instructions to examine the papers in the state Supreme Court to determine if a federal question was presented to that court which appropriately might have been reviewed by the Supreme Court of the United States.

Ordinarily, an inferior court should not withhold counsel because it thinks a particular question reviewable by a higher appellate court lacks substantiality. In the circumstances of this case, however, where the only remedy available to the District Court would be the prisoner's release on a writ of habeas corpus, we think it appropriate that on remand, if the District Court finds that one or more questions in the North Carolina Supreme Court was couched in federal terms, it may appraise the substantiality of the federal claim, and, if it appears patently frivolous, it may deny the writ.

2. *See* Day, Coming: The Right to Have Assistance of Counsel at All Appellate Stages, 52 A.B.A.J. 135.

## IV

Of course, we do not presume to influence the practice in the Supreme Court of the United States or in the Supreme Court of North Carolina with respect to the assignment of counsel in cases involving indigents after grants of writs of certiorari. The Supreme Court of the United States traditionally assigns a member of its Bar to represent indigents in such cases. We are concerned only with the preparation and filing of a petition for a writ of certiorari, a step which takes place before the litigant can reach the threshold of the Supreme Court. Our holding is only that the indigent litigant with a federal claim must be provided with the legal assistance at that stage, so that the litigant may have the benefit of professional counsel and the Supreme Court the assistance which inevitably flows from the preparation of petitions for certiorari by professionals instead of by untutored criminal defendants.

Finally, we may emphasize that we are dealing with the rights of defendants in criminal cases. Nothing which we have said should be taken as having any application in any collateral, civil proceeding, though it may call into question the validity of a previous criminal conviction.

## V

In addition to his right to counsel claims, Moffitt complains that he was not furnished with a transcript of the Guilford County trial. The Public Defender was furnished with such a transcript, but Moffitt claims to have had no access to it. The District Court denied this claim on the ground that Moffitt had shown no particularized need for it. We now affirm as to that. In further proceedings, his lawyer may have need for that transcript, but Moffitt has shown nothing to warrant a conclusion that he personally needs one.

## VI

For these reasons, the Mecklenburg County case will be remanded to the United States District Court for the Western District of North Carolina, with instructions to issue the writ, unless, within a reasonable time, North Carolina shall provide Moffitt with the assistance of a lawyer for the purpose of preparing and filing a petition for a writ of certiorari in the Supreme Court of North Carolina, and provided that Court shall receive the petition and not dismiss it as being untimely. The Guilford County case is remanded to the United States District Court for the Middle District of North Carolina, with directions to examine the contentions made by Moffitt in the Supreme Court of North Carolina and to grant the writ of habeas corpus, if, in the Supreme Court of North Carolina, Moffitt asserted a substantial federal claim reviewable by the Supreme Court of the United States on a writ of certiorari.

Affirmed in part; reversed in part, and remanded.