**Albert Lewis CAREY, Jr., Petitioner,**

v.

**Sam P. GARRISON, Warden, Central Prison, and the State of North Carolina, Respondents.**

**No. C–C–75–342.**

United States District Court, W. D. North Carolina, Charlotte Division.

Nov. 12, 1975.

Richard N. League, Asst. Atty. Gen., North Carolina Dept. of Justice, Raleigh, N. C., for respondents.

## ORDER

McMILLAN, District Judge.

Albert Lewis Carey, Jr. has presented a "Petition for Appointment of Counsel." He was convicted of murder in Mecklenburg County, North Carolina, and was sentenced to death. The conviction was affirmed October 7, 1975, by a divided North Carolina Supreme Court. Carey is now on death row at North Carolina Central Prison, Raleigh, North Carolina.

Petitioner was scheduled to be executed Friday, October 24, 1975, but his state court counsel, Mr. John H. Hasty, has informed the court that Chief Justice Sharp, of the North Carolina Supreme Court, ordered Carey's execution stayed for ninety days, to allow him to seek certiorari in the United States Supreme Court.

Carey asks this court to appoint counsel to represent him in his petition for

certiorari. Mr. Hasty informs the court that the state court has refused to provide counsel at this stage. Time is of the essence, because under Supreme Court Rule 22, ¶ 1, the petition, or a request for an extension of time, must be filed in the Supreme Court by January 5, 1976, ninety days after judgment was finally entered against Carey.

■ Mr. Carey's petition really fits no form, but it is a sworn petition, and it alleges indigency; it may properly be treated as a petition for writ of habeas corpus. So construed, the petition is read to allege that Carey is confined in violation of the Sixth Amendment, because the state has failed to provide counsel for his certiorari petition.

*Ross v. Moffitt,* 417 U.S. 600, 94 S.Ct. 2437, 41 L.Ed.2d 341 (1974), must be reckoned with. Moffitt had been convicted of forgery, in Mecklenburg and Guilford Counties, North Carolina. In this court, he sought appointment of counsel to represent him in a certiorari petition to the North Carolina Supreme Court, and in the Middle District of North Carolina, he sought appointment of counsel to seek certiorari to the United States Supreme Court. Both district courts denied relief, based on existing cases.

The Fourth Circuit Court of Appeals reversed both decisions in *Moffitt v. Ross,* 483 F.2d 650 (4th Cir. 1973). That court remanded for determination of the *prima facie* merit of Moffitt's constitutional claims of error in his trial, with instructions to grant Moffitt a writ of habeas corpus if (1) the claims were not frivolous, and (2) the state continued to refuse to provide counsel.

Judge Haynesworth, writing for an unanimous panel, concluded that *Douglas v. California,* 372 U.S. 353, 83 S.Ct. 814, 9 L.Ed.2d 811 (1963), required the state to appoint counsel for Moffitt.

The United States Supreme Court *reversed,* in a six to three decision written by Mr. Justice Rehnquist. He gave two reasons for the decision. First, he

concluded that Douglas did not require the state to appoint counsel for Moffitt's certiorari petitions. He distinguished *Douglas,* because it involved review as a matter of right, and then said:

> "This is not to say, of course, that a skilled lawyer, particularly one trained in the somewhat arcane art of preparing petitions for discretionary review, would not prove helpful to any litigant able to employ him. An indigent defendant seeking review in the Supreme Court of North Carolina is therefore somewhat handicapped in comparison with a wealthy defendant who has counsel assisting him in every conceivable manner at every stage in the proceeding. But both the opportunity to have counsel prepare an initial brief in the Court of Appeals and the nature of discretionary review in the Supreme Court of North Carolina make this *relative* handicap far less than the handicap borne by the indigent defendant denied counsel on his initial appeal as of right in *Douglas.* And the fact that a particular service might be of benefit to an indigent defendant does not mean that the service is constitutionally required. The duty of the State under our cases is not to duplicate the legal arsenal that may be privately retained by a criminal defendant in a continuing effort to reverse his conviction, but only to assure the indigent defendant an adequate opportunity to present his claims fairly in the context of the State's appellate process. We think respondent was given that opportunity under the existing North Carolina system."

(Emphasis added.) 417 U.S. p. 616, 94 S.Ct. p. 2446.

Of course this part of the discussion dealt with certiorari to the North Carolina Supreme Court, but the opinion goes on to hold this reasoning equally applicable to certiorari to the United States Supreme Court.

The above-quoted language indicates that the Supreme Court essentially re-

viewed all of the facts surrounding Moffitt's conviction and appeal, and concluded that the handicap suffered was not sufficient to raise equal protection problems.

Moffitt, however, faced only imprisonment; Albert Lewis Carey, Jr., on the other hand, may conceivably lose his very life, if his petition for certiorari is not granted; *and the fate of the petitioner, as Justice Rehnquist recognized, must inevitably be tied, at least in part, to the quality and presuasiveness of the petition.*

Where a man's life is at stake, I am not prepared to concede that the law in *Moffitt,* the case of a small time forger, should apply.

The second reason given for reversal in *Moffitt* was that if any duty existed, it was the duty of the *federal* government to provide counsel to represent Moffitt in his Supreme Court petition, because he was seeking relief in a federal court, not relief provided by the *state.* The court said it could not place a burden on states which it refused to place upon itself, and cited three instances in which it had refused to appoint counsel for certiorari petitioners. But the cases cited are all one sentence orders, and give no hint that they might have been capital cases. So again, I am not prepared to say that the United States Supreme Court would deny counsel to Carey, who is sentenced to die.

Moreover, the burden of supplying counsel is properly the burden of the state, because the state is the power which seeks to deprive Carey of his life, and it seeks to do so without fulfilling its obligation under the *Douglas* view of the Sixth Amendment.

*Morgan v. Yancey County Department of Corrections,* No. 74–1453, decided by the Fourth Circuit on October 2, 1975, does not compel a different result, because it, like *Moffitt,* did not involve a capital crime.

It is therefore ordered:

1. That the petition be filed *in forma pauperis.*

2. That the Clerk mail to Carey a form petition for writ of habeas corpus.

3. That Carey fill out the form, sign it, and swear before a notary public to the accuracy of the allegations in it, and return it to the court not later than December 1, 1975, so the court may have all of the facts before ruling.

4. That respondents, by December 10, 1975, answer the allegations of Carey's petition, and show cause why a writ of habeas corpus should not issue if the state is unwilling to provide counsel.