396 A.2d 1212

**COMMONWEALTH of Pennsylvania**

v.

**Rance Lee VIA, Appellant.**

Supreme Court of Pennsylvania.

Submitted Nov. 13, 1978.

Decided Jan. 24, 1979.

364

Menno B. Rohrer, Lancaster, for appellant.

D. Richard Eckman, Dist. Atty., Charles A. Achey, Jr., Asst. Dist. Atty., Edward F. Browne, Jr., Asst. Dist. Atty., Lancaster, for appellee.

Before EAGEN, C. J., and O'BRIEN, ROBERTS, NIX, MANDERINO and LARSEN, JJ.

## OPINION OF THE COURT

O'BRIEN, Justice.

In June, 1967, appellant, Rance Lee Via, was convicted by a jury of murder of the first degree, attempted robbery, and conspiracy. Immediately after the recommendation of sentence by the jury, appellant and his trial counsel indicated that no post-verdict motions would be filed. Appellant was then sentenced to life imprisonment for the murder conviction, with a consecutive prison term of ten to twenty years for the attempted robbery conviction. He was also sentenced to a probationary term of two years for the conspiracy conviction, this term to begin at the completion of the prison term imposed on the attempted robbery conviction. No direct appeal was taken from these judgments of sentence.

On April 4, 1968, appellant filed a *pro se* petition under the Post Conviction Hearing Act [1] where, along with the various allegations of error, he requested the appointment of counsel. While counsel was appointed, no amended petition was filed and his petition was dismissed without an evidentiary hearing. No appeal was taken from this dismissal of appellant's petition.

In August of 1971, appellant filed with this court a petition *in propria persona* for a writ of mandamus *in forma pauperis* and for appointment of counsel. This court remanded the matter to the Court of Common Pleas of Lancaster County with directions to treat the petition as one seeking post-conviction relief. This court also ordered an evidentiary hearing to determine if appellant had been denied his constitutional right to appeal from the 1967 judgments of sentence. Thomas Harting, Esquire, Public Defender of Lancaster County, was appointed to represent appellant. Following the evidentiary hearing, the court below, on January 28, 1972, denied appellant's petition. No appeal was taken from the order denying that petition.

1. Act of January 25, 1966, P.L. (1965) 1580, § 1, 19 P.S. § 1180–1 (Supp.1978–79).

On September 28, 1972, appellant filed a *pro se* petition with this court, requesting leave to file an appeal *nunc pro tunc* from the January 28, 1972 order. He also requested the appointment of counsel. This court granted appellant's petition and remanded the matter to the Lancaster County Court of Common Pleas for appointment of counsel. This court further ordered that the appeal be filed on or before December 11, 1972. On November 16, 1972, the Court of Common Pleas of Lancaster County again appointed Thomas Harting to represent appellant on his appeal to this court.

During *four and one-half years*, appellant's counsel did nothing on appellant's behalf until *February 4, 1977*, when he filed a petition with the Court of Common Pleas of Lancaster County requesting vacation of his appointment as counsel. That court vacated the appointment and appointed present counsel. On August 17, 1977, this court granted appellant's petition for permission to appeal *nunc pro tunc.* It is the propriety of the January 28, 1972, order dismissing appellant's second PCHA petition that is now before this court.

Appellant complains that the court below erred in dismissing his second PCHA petition, since he believes he established that he was not afforded the rights guaranteed a criminal defendant in *Douglas v. California*, 372 U.S. 353, 83 S.Ct. 814, 9 L.Ed.2d 811 (1963). Appellant argues that he was not told either that counsel would be appointed to represent him on direct appeal or that appointed counsel would provide representation at no cost to appellant.

The facts surrounding this issue are as follows. Immediately following the reading of the jury's decision that life imprisonment be the penalty, the following exchange took place:

"THE COURT: Are there any motions on the part of counsel or do you wish sentence imposed?

"MR. GROVE (co-defense counsel): Your Honor, as a member of this Bar, I don't think there is any justification for making a motion for a new trial. I think that the verdict of guilty of murder in the first degree was emi-

nently correct and it is my opinion there is no basis for making a motion, and I am not going to do it.

"MR. O'BRIEN (co-defense counsel): Nor I, your Honor."

Appellant was then called before the court and the following "colloquy" occurred:

"THE COURT: You understand, do you, that regardless of the advice of your counsel, you have the right to file a motion for a new trial and if that motion is denied by this Court, you have the right to an appeal to the Supreme Court of Pennsylvania for a review of this case, to determine whether or not the trial was fair, to determine whether or not you are entitled to a new trial. Do you understand that thoroughly?

"RANCE LEE VIA: Yes.

"THE COURT: Is it your wish to file a motion for a new trial?

"RANCE LEE VIA: No.

"THE COURT: Are you satisfied that you have had—

"RANCE LEE VIA: Yes.

"THE COURT: —a fair and impartial trial here by a fair and impartial jury?

"RANCE LEE VIA: Yes, your Honor.

"THE COURT: Are you satisfied that your counsel have been eager and industrious in pursuing your defense and in doing for you everything that was within their power to do?

"RANCE LEE VIA: Yes, I am very much.

"THE COURT: You have no complaints then as to the manner in which you have been represented by Mr. Grove and Mr. O'Brien?

"RANCE LEE VIA: None at all."

The court then sentenced appellant as set forth above.

At the PCHA hearing, one of appellant's co-counsel testified that he had an extended discussion with appellant the evening between the jury's determination of guilty and the subsequent determination of the punishment to be imposed. Counsel testified that the primary purpose of the meeting

was to prepare appellant for his testimony during the punishment stage of the proceedings. The following exchange then occurred:

"THE COURT: What we are primarily concerned with here, whether or not he knew of his rights as far as filing a Post Trial Motion and of appealing from a dismissal of those rights, and *of his continuing right to have counsel furnished to him without any charge to him.*

"THE WITNESS (defense counsel O'Brien): There is no question in my mind, your Honor. And the thing I would say about the record is it makes it appear that there was no time for discussion as to his rights of appeal. But I know we discussed it because I spent several hours with him *between the time the verdict came in and the time we presented the testimony as to punishment the next day.* And also I talked with him a great deal—a length of time waiting for the verdict to come in." (Emphasis added.)

On the basis of this testimony, the PCHA court held that appellant had been fully informed of all his *Douglas* rights. Having been so informed, the court held that in light of the presentence colloquy between appellant and the court, appellant had knowingly, intelligently and voluntarily waived his *Douglas* rights.

However, appellant claims that although he was informed about some of his rights concerning a possible appeal, he was not informed that different counsel would be provided free of charge. As he explained:

"My lawyers asked this Court or informed the Court that they didn't want to file Post Trial Motions. And when they said that, I was of the opinion that I no longer had counsel because they didn't want to file Post Trial Motions. They felt that the Jury and the sentence were justified. Now when the Court called me up before the Bar, I did not know if Mr. O'Brien and Mr. Grove would take my appeal because the Court advised me of its rights. Because they had just said that they didn't want to file Post Trial Motions. But the Court did not tell me that if the two attorneys would leave the case that I could have

new counsel appointed for me free of charge. And at that time, I did not have the funds."

Thus the issue before this court is whether the PCHA court was correct in finding that appellant had knowingly, voluntarily and intelligently waived his *Douglas* rights under the facts of this case.

■ Preliminarily, the Commonwealth argues that appellant had waived the instant claim, since he failed to allege a denial of *Douglas* rights in his 1968 PCHA petition. The Post Conviction Hearing Act provides:

"(b) For the purposes of this act, an issue is waived if:

"(1) The petitioner knowingly and understandingly failed to raise it and it could have been raised before the trial, at the trial, on appeal, in a habeas corpus proceeding or any other proceeding actually conducted, or in a prior proceeding actually initiated under this act; and

"(2) The petitioner is unable to prove the existence of extraordinary circumstances to justify his failure to raise the issue." 19 P.S. § 1180–4 (Supp. 1978–79)

Appellant's 1968 PCHA petition, however, was filed *pro se*. While counsel was appointed, no amended petition was filed and the *pro se* petition was dismissed without a hearing. In *Commonwealth v. Scott*, 469 Pa. 381, 366 A.2d 225 (1976), we held that under circumstances identical to those in the instant case, the post-conviction proceedings were uncounselled, despite the appointment of counsel. Since the 1968 proceedings must be treated as uncounselled, *Commonwealth v. Fiero*, 462 Pa. 409, 341 A.2d 448 (1975), forbids any theory of waiver being predicated on such uncounselled proceedings. The Commonwealth's theory of waiver is thus without merit and we must now turn to the merits of appellant's claim.

■ The PCHA court found that appellant was aware of his *Douglas* rights. The court based this finding on the above-quoted testimony of defense counsel O'Brien that *the night before the jury's determination of punishment*, he had informed appellant of his continuing right to have counsel,

free of charge, on appeal. The court thus found an "intentional relinquishment or abandonment of a known right." *Johnson v. Zerbst*, 304 U.S. 458, 464, 58 S.Ct. 1019, 1023, 82 L.Ed. 1461 (1938). Because of the peculiar facts of the instant case, we do not believe the evidence is sufficient to establish appellant was fully informed of his *Douglas* rights, thus allowing a valid waiver of said rights.

Here, both trial counsel told the court that they did not intend to file post-verdict motions, as they believed appellant had received a fair trial. As appellant testified, he was aware that he had a right to appeal, but after his attorneys testified they did not intend to file post-verdict motions, he did not know, nor was he told, that other counsel, free of charge, could be appointed to represent him on appeal. The evidence on which the court based its finding that appellant had been fully informed of his *Douglas* rights simply concerned what appellant had been told prior to the attorneys' in-court statements that they would not file any post-verdict motions. Thus, when appellant was informed of his continuing right to counsel, he may reasonably have understood the information to mean that trial counsel would represent him on appeal. Further, our review of the record reveals not a scintilla of evidence that following trial counsel's statements concerning their lack of willingness to file post-verdict motions, appellant was told he was entitled to other counsel, free of charge, on appeal.[2] As the record does not indicate that appellant was fully informed of his *Douglas* rights, the PCHA court erred in finding a knowing and intelligent waiver of said rights.

Order of the Court of Common Pleas of Lancaster County is reversed and the case remanded for filing of post-verdict motions *nunc pro tunc.*

2. At the PCHA hearing, co-defense counsel Grove testified on cross-examination:
"Q. At the time you told him that he had a right to appeal, did you tell him that you would take the appeal?
"A. I don't know whether we got into the subject of actually who would take the appeal. I know it was explained to him that he had the right to appeal."

POMEROY, former J., took no part in the decision of this case.

EAGEN, C. J., and ROBERTS, NIX and LARSEN, JJ., concur in the result.