THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v. FRANK LAUDATI, Appellant.— Appeal by defendant from a judgment of the Supreme Court, Kings County, rendered September 16, 1970, convicting him of murder (two counts), upon a jury verdict, and sentencing him to a prison term of 20 years to life on each count, the sentences to run concurrently. Judgment affirmed. We are of the opinion that the present mental state of appellant does not require that we hold his appeal in abeyance. We note that the cases relied on by the dissenters (*People* v. *Aponte,* 28 N Y 2d 343; *People* v. *Zodda,* 37 A D 2d 736; *People* v. *Franco,* 38 A D 2d 743) involved situations wherein hearings were required at which the defendant would be required to be present. The defendants in those cases were mentally ill at the times of the proceedings and, accordingly, the hearings could not be had until their conditions would improve. This is to be contrasted to the present case where the presence of defendant is not required and the appeal is decided solely on the record and briefs. It is one thing to seek to protect one seeking postconviction relief via a hearing when he is unable to understand the proceedings (*People* v. *Aponte, supra*; *People* v. *Zodda, supra*) and quite another to deny an insane defendant the right to have his appeal prosecuted by counsel. Further, the views of the dissenters herein would, if a reversal of the judgment of conviction were contemplated, deprive defendant of such decision merely because of his mental state. The fact that we believe that an affirmance is the proper disposition of this appeal does not foreclose defendant from seeking further appellate review. There is always the possibility of a reversal by the Court of Appeals. However, if we were to adopt the course chosen by the dissenters herein that possibility would be destroyed. We believe that it is significant that the only jurisdiction which has adopted the rule favored by the dissenters (Texas) has done so by statute and not case law (see Vernon's Ann., Code of Crim. Pro., art. 46.02, §§ 4; 6). Rabin, P. J., Martuscello and Latham, JJ., concur; Hopkins, J., dissents and votes to hold the appeal in abeyance until defendant is released from the present detention in which he was placed by reason of posttrial mental illness, with the following memorandum, in which Benjamin, J., concurs: Defendant was convicted of two counts of murder and sentenced to concurrent terms of 20 years to life. On April 1, 1968 the bodies of his wife and eight-year-old son were discovered in their home, after a statement made by defendant to a nurse in the Kings County Hospital, where defendant was confined for mental observation. Two days before (apparently after the killing of his wife and son), defendant

attempted to hold a press conference at the FBI building in New York City concerning a "Communist-Mafia" conspiracy and, as a result of his bizarre behavior, he was placed in the hospital. After his arraignment on April 2, 1968 defendant was returned to Kings County Hospital for further observation. On April 15, 1968 a psychiatric report was made to the effect that defendant was suffering from paranoid schizophrenia and was unable to consult with counsel and understand the nature of the charges against him. After his indictment on July 29, 1968 he was again observed at the hospital and on August 19, 1968 psychiatrists reported that he was competent to stand trial. At the trial, defendant instructed his counsel not to enter a plea of not guilty by reason of insanity or to raise the issue of his capacity with respect to the statements made by defendant on April 1, 1968 during his confinement at the hospital. On July 21, 1970 a jury found defendant guilty of murder of his wife and son and this appeal followed. At the argument of this appeal on September 21, 1972 defendant's appellate counsel informed the court that defendant was confined to Dannemora State Hospital. Subsequently it was learned through correspondence with State correctional officers that defendant was admitted to Dannemora State Hospital on February 8, 1971 by transfer from Attica Correctional Facility upon discovery that he was suffering from mental illness. On February 5, 1971, by order of the County Court, Wyoming County, defendant was committed to the State hospital for a period not to exceed six months; by successive orders his commitment was continued; and he presently remains under that commitment (see Correction Law, § 408). The question thus arises whether we may proceed with the determination of this appeal. If defendant resting under the commitment were to seek *coram nobis* relief, he would be barred until it would be found that he was competent to participate in legal proceedings (*People* v. *Aponte*, 28 N Y 2d 343). Where a hearing had previously been granted to a defendant and had not been held because he was insane, our court directed that the appeal be kept in abeyance until he would recover (*People* v. *Zodda*, 37 A D 2d 736). Moreover, in *People* v. *Franco* (38 A D 2d 743), on direct appeals from judgments of conviction based on guilty pleas, our court held the defendant's appeals in abeyance because we found that his commitment to Dannemora State Hospital, coupled with his prior history of mental illness, required a hearing as to his competency at the time of the pleas. These cases manifest a clear concern by the courts to insure the protection of the defendant while he is incapacitated by mental illness. Though in each case a hearing was or may have been necessitated, and the defendant's presence or testimony may have been essential at the hearing, and to this extent the cases may be distinguished factually from the argument of an appeal alone, I do not think that we should treat this case differently from the others. The effective aid of counsel on appeal is guaranteed to all defendants convicted of the commission of crime (*Douglas* v. *California*, 372 U. S. 353; *Swenson* v. *Bosler*, 386 U. S. 258). Whether under the old test of ability to understand the proceeding or making his defense (cf. Code Crim. Pro., § 662-b; former Penal Law, § 1120) or the present test of his fitness to proceed (CPL 730.10) — both of which being seemingly equivalent — a defendant's capacity to communicate intelligently with his counsel is considered an important part of the test of competency (cf. *People ex rel. Fazio* v. *McNeill*, 4 A D 2d 686; *People ex rel. Butler* v. *McNeill*, 30 Misc 2d 722). The question is " ' whether he has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding — and whether he has a rational as well as factual understanding of the proceedings against him ' " (*Dusky* v. *United States*, 362 U. S. 402). Our instructions to assigned counsel on appeal emphasize the need of communication and that a defendant is indeed the client of

counsel.[1] A defendant is entitled to consult with his counsel on appeal; and it is not beyond possibility that counsel may be enlightened by a defendant as to occurrences at the trial, particularly where, as here, appellate counsel did not try the case. In this appeal, the need of communication is strongly evident in the light of defendant's unusual behavior and the determination prior to indictment that he was incapable of standing trial; moreover, appellate counsel might well require the aid of defendant in presenting the appeal as to the reason for the insistence of defendant that insanity not be suggested as a ground of defense. I am aware of the other side of the coin. Incapacity of a defendant does not end all efforts on his behalf (e.g., CPL 730.60, subd. 5; cf. Mental Illness, Due Process and the Criminal Defendant, Assn. of Bar of City of N. Y. and Fordham Law School [Fordham Univ. Press, 1968], pp. 108-111). But CPL 730.60 (subd. 5) speaks only of pretrial motions which may be "susceptible of fair determination without * * * [the defendant's] personal participation"; and a denial of such a motion is without prejudice to a renewal after the proceeding continues. Obviously, all of this is for a defendant's protection. Here, the determination of the appeal terminates defendant's claims. An argument might of course be made that we should not withhold a reversal of the judgment or a dismissal of the indictment as a result of an appeal — for both would be to defendant's advantage. On this appeal this is not the result, for defendant's conviction is being affirmed. Close as a parallel to this case is *People v. Cossentino* (14 N Y 2d 750). There, the Court of Appeals withheld a decision on the defendant's direct appeal from a conviction of murder in the first degree, pending a psychiatric examination of his mental condition at the time of the appeal. The implication is plain that the appeal should not be determined while any question of defendant's competency is presented.[2] Since defendant is entitled to the effective representation of counsel, and that representation, to be effective, requires the co-operation of defendant, this appeal should be held in abeyance until defendant is competent.[3] In the meantime, no harm is done to the People, for the defendant remains confined. On the other hand, to decide the appeal now, in view of the question of the defendant's sanity which pervades this entire record, would be highly prejudicial to him.

---

1. Our letter to assigned counsel reads in part: "It should be emphasized that with respect to this appeal the appellant is your client and he should be treated as such. * * * Therefore, under no circumstances, should you disparage, either to him or to this court, the validity of any point asserted on his behalf, regardless of your personal feelings; nor should you give any intimation that you lack faith in the merit of his appeal. * * * Of course, as already indicated, in your brief you may enumerate separately those points which you are urging upon appellant's insistence or at his suggestion."

2. Compare *Matter of Anonymous v. Anonymous* (7 A D 2d 932), where an appeal by an infant was dismissed, because no guardian had been appointed, and it was said that the court did not have jurisdiction of the appeal.

3. It is significant that in Texas a statute requires that an appeal by an incompetent defendant shall be held in abeyance pending the appellant's return to sanity (Vernon's Ann., Code of Crim. Pro., art. 46.02, §§ 4, 6; see *Smith v. State*, 336 S W 2d 169 [Texas]; *Nugent v. State,* 155 Tex. Cr. Rep. 269; *Jones v. State,* 137 Tex. Cr. Rep. 150).