[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The Department of Children and Families (DCF) seeks to terminate the parental rights of Sheila W. and Willy A., Jr., the mother and acknowledged father of Veronica A. and Sonya A., pursuant to the provision of 17a-112, rev. 1991, so that they may be placed in a permanent home through adoption. The parents have been served in accordance with Conn. Gen. Stats. as of file appears. Both appeared at the initial hearing on January 28, 1993. Both parents entered denials and were represented by counsel. Neither the mother nor father appeared at the time of trial which was held on September 27, 1993.
The court considered the statutory considerations and procedural requirements set forth in 17a-112 as amended byPublic Act 93-193. The following persons were available for cross-examination as to their reports or actually testified at the hearing: Dr. Bruce Freedman, clinical psychologist; Tammi Cuyler, social worker; Kelcy Laing, social worker; and Kim V. Meldrum, social work supervisor for DCF.
The following documents were offered in evidence:
 (a) A psychological evaluation prepared by Dr. Bruce Freedman.
(b) Termination study by DCF.
(c) Addendum to termination study dated May 20, 1993.
 (d) Addendum to termination study dated September 27, 1993.
In addition, the court took judicial notice of the following documents: CT Page 8418
 (1) Memorandum of Decision on neglect and uncared for petition In Re Veronica A. dated September 27, 1991.
 (2) Memorandum of Decision on neglect and uncared for petition In Re Sonya A. dated June 18, 1992.
 (3) Memorandum of Decision on termination of parental rights In Re Willy A. III for adjudication and commitment of Lashane A. dated October 16, 1992.
Based upon the testimony presented, the reports in evidence, the judicial notice of documents, the court finds by clear and convincing evidence the following as of the date of the filing of the petition:
1. Abandonment
The contacts the parents have had with their children since the date of placement do not constitute a reasonable degree of interest, concern, or responsibility as to the children's welfare sufficient to defeat the conclusion that the children were abandoned as that term is defined in 17a-112, subsection (b). Abandonment for this purpose must be determined by the manifestations of such interest, concern, or responsibility to the children, not by what might have been intended by the nonvisiting parents. The focus is on the parents' conduct and that is a question of fact which the court resolves, under the circumstances of this case, adverse to the parents. In Re Shannon S., 41 Conn. Sup. 145, 151 (1989).
2. Failure to Rehabilitate
The Connecticut Appellate Court has referred to "personal rehabilitation" as "the restoration of a parent to his or her former constructive and useful role as a parent." In Re Rayna M., 13 Conn. App. 23, 32 (1987). In this case it is questionable from the reports in evidence whether the children's parents could be regarded as ever having exercised any constructive and useful role in the childrens' life and development. Neither parent at the time of filing the petition had a meaningful place to call home. Neither parent kept the Department of Children and CT Page 8419 Families informed of their whereabouts at all times. Neither parent regularly and meaningfully visited their children. Neither parent remained drug free consistently.
There is overwhelming evidence that these parents having been found by a superior court to have neglected their children in prior proceedings have failed to achieve such degree of personal rehabilitation as would encourage the belief that within a reasonable time, considering the age and needs of the children, that they could assume a responsible position in the lives of their children.
3. No Ongoing Parent-Child Relationship
The court having heard Dr. Freedman's observations and read his report with respect to these children can only conclude that these parents do not have the ordinary relationship that develops as a result of the parent having met on a day-to-day basis the physical, emotional, moral and educational needs of the children as the statute defines such a relationship. Considering the modification of the statutory definition required by the opinion In Re Jessica M., 217 Conn. 459 (1991), such relationship does not exist and has not existed for more than one year. There is no sign of any present memories or positive emotional ties with either parent. It is equally clear that to allow further time for the establishment for such a parent-child relationship would be detrimental to the best interests of the children in this case.
Disposition
Having determined that grounds existed for terminating the parents' rights as of the date of the filing of this petition, the court must next consider all of the changes and circumstances as of the final day of trial and also consider the seven factors set forth in subsection d of17a-112 as amended.
1. The Department of Children and Families' social workers gave the parents the foster families' address and telephone numbers, permitted them to make their own arrangements for visitation, and repeatedly referred the parents to agencies where drug assessment evaluation and treatment could be obtained. Neither of the parents CT Page 8420 regularly requested help for transportation to visits, although bus passes were issued but not used, and no requests for visitations were ever refused. DCF could do no more to facilitate the reunification of this family. DCF waited to file this petition to terminate the parental rights for a substantial period of time, giving the parents an opportunity to rehabilitate themselves and hopefully reunite with their children. Unfortunately, the passage of time did not result in either parent moving closer to a position where the children could be safely returned and nothing in evidence supports an inference that the passage of still more time would produce a different result.
2. The Department of Children and Families offered appropriate services, guidance and sufficient time to permit family reunification (see number 1 above). The court concludes that reasonable efforts have been made pursuant to the Federal Child Welfare Act of 1980 as amended.
3. The Department of Children and Families and Children in Placement with the approval of the courts set expectations and monitored those expectations for the parents. While not orders, the expectations of the court which were signed by both parents and their attorneys at the time of their children's commitment, have been largely unfulfilled. Most notably the parents have failed to consistently remain drug free, have consistently failed to advise DCF of their whereabouts and have failed to regularly visit their children.
4. Dr. Freedman's conclusion was unequivocal and not refuted that the children have a normal and nurturing parent-child bond with their foster mother while giving no indication of having any positive relationship with either biological parent. This condition has existed for more than one year.
5. Age of Children
Veronica was born on August 13, 1990. Sonya was born on September 12, 1988. Sonya has been in placement since October 22, 1991. Veronica has been in placement since June 28, 1991. Both children have been in placement for a great portion of their young lives. It is clear that CT Page 8421 their best interests will be served by assuring them of permanency in a home where they are bonded and secure. To wait longer would be clearly detrimental to their development.
6. Neither parent has made the degree of effort and commitment necessary to be a productive and contributing parent to these children. Neither parent has maintained the contact with the children as part of an effort to reunite with their parents nor has either of the parents had regular communications with the guardian, which would reflect a genuine interest and concern for the children. All indications from the records and testimony reflect two people who have very limited abilities in their own right and virtually no parenting instincts or skills.
7. The court has carefully considered the testimony and reports in evidence which suggest that nothing has occurred which has prevented either parent from maintaining a meaningful relationship with these children, if indeed a true parenting relationship has ever existed which could have been maintained. The parents were given unlimited access to the foster home and for many months lived only a short walk away from the foster home. The parents' decision to continue their drug activities does not suggest that they themselves are committed to maintaining any meaningful relationship with their children.
Having considered the foregoing and mindful of the clear recommendation of the clinical psychologist, it is found by clear and convincing evidence to be in the best interests of these children for their parental rights to be terminated so that they may be adopted without further delay. It is therefore ordered in Case No. N-92-888 In Re Sonya A. and in Case No. N-92-889 In Re Veronica A. that the parental rights of Shiela W. and Willy A., Jr. be and hereby are terminated and it is further ordered that the Commissioner of Children and Families be appointed statutory parent for the purpose of placing the children forthwith in adoption and to report to this court in writing as to the progress toward such end no later than 90 days from the date of this judgment. If adoption has not been finalized within six months from the date of this judgment, the said Commissioner is further ordered to submit a Motion to Review Plan for Terminated Child as to CT Page 8422 each of these children no later than that date to ensure compliance with federal law that mandates judicial review of every child in the guardianship of the state at least every 18 months.
APPEAL
The parents have 20 days from the date of this judgment in which to take an appeal. If an appeal is requested and trial counsel are willing to continue representation, this court will appoint those attorneys to act as appellate counsel, at public expenses, if the appellant is indigent, until all appellant process is completed. Practice Book 4017. If, however, in the exercise of professional judgment as officers of the Superior Court, the attorneys decline to perfect such appeal because, in the attorneys' opinions, it lacks merit, they are not required to do so but may instead simultaneously file a timely motion to withdraw and another motion to extend the appellate period to the full maximum of 40 days as permitted by law. Practice Book 4040. Such motions, if unopposed, will be granted ex parte and new attorneys appointed to review this record and make an independent determination of the merits of such appeal. If the second attorneys determine it lacks merit, the reason for this opinion shall be promptly submitted to the court in writing. The parties seeking the appeal will then be informed by the court clerk that the parties have the balance of the 40 days in which to secure counsel for the purpose of taking such appeal, who may, if qualified, be appointed by the court to be compensated by the state. Douglas v. California, 372 U.S. 353 (1963); Fredericks v. Reincke, 152 Conn. 501 (1965).
If such procedure satisfies the sixth amendment right to counsel in a criminal proceeding, it is a fortiori appropriate where there are interests of a third party involved: those of the child whose interest in achieving permanent nurturing parents without unnecessary delay is entitled to at least as great a degree of consideration as those of the parents whose rights to raise the child are at issue. Even an unsuccessful appeal could delay permanent planning for years since no child may be adopted until the appellate process is exhausted. CT Page 8423
Entered at Hartford this 15th day of October, 1993.
Foley, J.