[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The Department of Children and Families seeks to terminate the parental rights of Irene V. pursuant to the provisions of Section 17a-112, revised 1993, so that two of her children may be placed in permanent adoption. The petition indicates that the father of the children is unknown. Mother has been served in accordance with the statute and was capably and competently assisted by counsel during the course of the trial of this case. CT Page 4747-F
These proceedings were initially instituted by virtue of a neglect petition which was filed on September 20, 1990. On March 21, 1991 an adjudication of neglect was entered and the children were committed to the then Department of Children and Youth Services. These children have not been in the care of Irene V. since July of 1990, nearly four years ago.
The children for whom the petitions are filed are Christina V. born on November 13, 1982 who at the time of the trial was eleven years of age and Patrick V. who was born on March 17, 1989 and at the time of the trial was five years of age.
There are two other siblings who are both fifteen years of age and who are in foster care. They are not the subject of these termination of parental rights proceedings.
Irene V. has been referred to protective services off and on since 1986. During the four year period from 1986 to 1990 numerous referrals were made to the Department of Children and Youth Services (now known as Department of Children and Families) due to the inability of Irene to provide a safe, nurturing and permanent environment for herself and her then three children. During this period she off and on lived in emergency shelters; she was offered services by the Department which she frequently failed to pursue; she was offered services for counseling and evaluation of her children; she allegedly physically and emotionally neglected her children; at times home visits indicated that there was little food in the house, the children were dirty, possessed poor personal hygiene, mother maintained poor housekeeping standards and there was evidence of drug use and alcohol use during this period of time. In 1989 Irene agreed to enter a detoxification program but failed to follow through. She and the children were frequently' relocated for failure to pay rent and resided in emergency shelters.
In early 1990 Irene's physical care and supervision of her children deteriorated. The report of the social worker indicated that the children were poorly dressed wearing shabby and dirty clothing, the mother's apartment was found to be dirty, cluttered and containing minimal furniture, CT Page 4747-G the older children were frequently truant from school. The worker from the Department of Children and Families arranged for delivery of furniture, household items and services for the care of the children. The school social worker reported to the Department of Children and Families on April 26, 1990 that one of Irene's children was habitually truant from school and had missed seventy-two days of school.
In July of 1990 the Hartford Police Department responded to neighbors' complaints that the older children were missing from mother's home. The police officer found mother passed out in an intoxicated state; her sixteen month old child Patrick was observed crying on the floor in one of the rooms. Mother was unable to determine the whereabouts of her children. Mother was arrested for four counts of risk of injury to minor children and transported to the Morgan Street detention center. The police indicated that the apartment in which the children resided was filthy, cluttered, having a foul odor and containing little food, the small amount of food they found was not edible, empty liquor and wine bottles were scattered about and the odor of cat feces was very prominent. The children were placed on a ninety-six hour hold. The children's foster mother testified during the trial that when the children first came to her in 1990, the sixteen month old child Patrick was covered with sores and was clinging to his sister Christina, the children were hungry, they ate from garbage cans, they hid food, and Christina was very protective of her younger brother Patrick, Christina stuttered, used swear words, and was very guarded in her conduct.
Irene signed an agreement for voluntary placement on July 17, 1990 at the Niantic Correctional Center for Women. The Department subsequently filed a neglect petition which, as earlier noted, was adjudicated on March 21, 1991.
The Department characterizes Irene as an emotionally overwhelmed, multi-problemed woman who has been resistant to Department of Children and Families intervention and assistance since 1987.
During the course of the time that this matter has been under the supervision of the Department of Children and CT Page 4747-H Families and in the juvenile court there have been five psychological evaluations conducted by David M. Mantell, PhD., to evaluate this woman and her biological offspring. Each evaluation has been thorough and after each evaluation reports were rendered and filed with this court on February 4, 1991, June 25, 1992, August 10, 1992, February 26, 1994 and April 15, 1994.
Dr. Mantell described this mother as a "physically healthy appearing self-supporting thirty-four year old woman with a history of alcohol and drug abuse, in remission, who is probably chronically depressed, at least to a mild to moderate degree and with inadequate personality characteristics and with inadequate parental motivation." The fifth evaluation concludes as follows:
 Although Irene V. apparently has intensified the frequency of her contacts with children during the past year, she remains, however, a psychologically inadequate unreliable person who is parentally unrehabilitated. She acknowledges that she is unable to provide her children with a home at this time. Her future plans in that regard are vague. She does not have the psychological where-with-all to complete a psychological examination still presenting in a psychologically marginal fashion with strongly inadequate personality characteristics, lack of judgement and insight, and stronger priorities which preclude an active meaningful involvement in her children's lives. She is essentially out of touch with her children, knowing very little about them, engaging them peripherally, attempting primarily to keep their relationship alive through unpredictable visitation pattern and her promises about an unspecific reunified future. Understandably, her children's primary attachments are with their foster families. The mother has been allowed an unusually long time to engage in rehabilitation. Her failure to do so in combination with the pattern of her contacts with her children is seen as a disruptive and disabling force in their lives interfering with their general adjustment as well as their attachment capacities. For CT Page 4747-I these reasons I find that there is more than ample reason psychologically to support the legal termination of the mother's parental rights in order to maximize the children's best interest.
The mother, Irene V., argues against termination representing that she has been able to maintain a job for three years at the same convalescent home as an aide, she further represents that she has increased within the last year her visits with the children. It is undisputed that the visits have increased in frequency in the past year, are usually five to ten minutes in duration, that they have been unannounced, and usually outside the home of the foster mother. The foster mother has never prevented these visits from occurring and on a recent occasion mother brought with her a friend whom she announced to Patrick and Christina would soon be their new daddy. Several of the witnesses testified to the deleterious effect that this had on the child Christina's conduct.
It is undisputed that mother does not know the most fundamental information about her children, she does not know their height, their weight, their school, their teachers, their friends, but during these random visits mother promises reunification without any genuinely realistic understanding of the children's physical, intellectual, emotional, social, and moral needs.
Irene argues that since she has been able to maintain a job and since she alleges that she has been free of substance abuse, even though she is now unable to provide a home for the children she should be allowed further time in order to achieve reunification. The flaw in her argument is two-fold first, she confuses personal and parental rehabilitation. While Irene V. clearly deserves credit for her ability to secure and maintain employment, and perhaps also for remaining free of substance abuse, those achievements relate to her personal rehabilitation. The statute requires that personal rehabilitation relates further to her ability to assume a responsible position in the life of the children. The mother in her testimony has indicated that she does not at this time have a place to stay overnight with the children. It is also clear from her own testimony in court and the findings of Dr[.] Mantell that she lacks the appropriate judgment, insight and CT Page 4747-J understanding of her children's needs to effectively act as their full time parent at this time. As indicated earlier, it is now nearly four years since these children were placed in foster care. It would be unwise, imprudent, and not in the best interest of the children to allow further time for her to physically secure shelter for the children, but more importantly for her to develop the personality characteristics, judgement, insight and priorities which are essential to meaningful involvement in her children's lives.
ADJUDICATION
Based upon the testimony presented and the exhibits offered in evidence, the court finds by clear and convincing evidence, these children having been found to be neglected on March 21, 1991, that Irene V. has failed to achieve a degree of personal rehabilitation that would encourage the belief that within a reasonable period of time, considering the age and needs of the children, that she could assume a responsible position in the lives of these children. The court finds further that these grounds have existed over an extended period of time which is greater than one year. The court finds based upon the testimony presented that it would be in the children's best interest to terminate the parental rights at this time. Considering the children's sense of time, their needs for a secure and permanent environment, the relationship that the children have with their foster parents, the court concludes from the totality of circumstances that the termination of parental rights is in the children's best interest.
DISPOSITION
Having determined that grounds for terminating the parental rights of Irene V. exist, the court must then consider the seven factors set forth in Subsection D of Section 17a-112 as amended.
1) The Department of Children and Families has offered appropriate and timely services as more fully described in paragraph VIII of the Social Study for Termination of Parental Rights (State's Exhibit C). CT Page 4747-K
2) The court finds that the Department of Children and Families has made reasonable efforts given the situation and circumstances to reunite these children with this parent. The Department has allowed an inordinate period of time for Irene to rehabilitate herself.
3) Regarding court orders, fulfillment of obligations, expectations and the like, the court finds that Irene successfully satisfied some of the courts expectations. She got a job and she probably remained free of substance abuse, although it was reported that she appeared for visitation smelling of alcohol. In four years however, she has failed to obtain and maintain a safe, secure and permanent home for these children. A person with strong parental instincts, committed to the well-being and development of a child knows on a visceral level that children need daily physical contact, stimulation, affection, and discipline. They also need a "nest". While these needs appear self-evident to most parents, they are not at all compelling and motivating components of Irene, s [Irene's] existence.
4) The children's feelings and emotional ties with the biological parent and foster parents were fully considered by the psychologist and the court. The children are clearly bonded to their foster parents and the children's counselor indicated that the children were fearful of returning to their natural mother. The social worker indicated that the children were emotionally bonded to the foster mother.
5) With respect to the ages of the children, Christina is nearly twelve and Patrick is five. These children, require stability in their lives and an affirmation by this court that they have a permanent home. Leaving these children in legal "limbo" could hardly be in their best interest. A four year delay in bringing finality to the placement decision is wholly inappropriate.
6) With respect to the foreseeability of mother establishing a relationship with the children, there has been some suggestion made that even if the termination of parental rights is granted the children's need to see their biological parent should not be permanently foreclosed. It CT Page 4747-L is clear that termination of parental rights would give to the children permanency and predictability with respect to their future and hopefully would prevent the mother from promising a fantasy reunification when it is in fact not a realistic probability. Whether future contact is appropriate and to what extent is an issue for another day. It is unquestionably appropriate at this time to allow some extended period of time to lapse where the children are not exposed to Irene and consequently confused and unsettled in their foster placement.
7) While the mother in her memorandum of law suggests that problems with the Department of Children and Families were in some way a barrier to her, it is clear from the testimony that she was able to see her children virtually at will and without appointment or prior communications. The foster parents' home was in geographic proximity to mother's residence, in point of fact mother frequently walked by the foster parents' home in order to visit her other children. The court concludes that mother was not in any way prevented from maintaining a meaningful relationship with her children. As indicated by the testimony and documentary evidence, mother's maternal instincts and needs for a relationship with her biological off-spring were satisfied by very minimal, sporadic contact with these children.
ORDER
Having considered the foregoing facts and mindful of the clear recommendation of the licensed clinical psychologist it is found by clear and convincing evidence to be in the best interest of Christina V. and Patrick V. for the parental rights of their mother Irene V. to be terminated so that these children may be placed in adoption without further delay. It is therefore ordered that the parental rights of Irene V. be and they hereby are terminated. It is further ordered that the Commissioner of Children and Families be appointed the statutory parent for the purpose of placing the children forthwith in adoption and to report to this court in writing as to the progress toward that end no later than ninety days from the date of this judgment. If adoption has not been finalized within six months from the date of the judgment the Commissioner is further ordered to submit a motion to review a plan for CT Page 4747-M terminated children as to each of these children no later than that date to ensure compliance with federal law which mandates judicial review of every child in the guardianship of this state at least every eighteen months.
APPEAL
The parents have twenty days from the date of this judgment in which to take an appeal. If an appeal is requested and trial counsel is willing to continue representation, this court will appoint such attorney to act as appellate counsel, at public expense if the appellant is indigent, until all appellate process is completed. Practice Book § 4017. If, however, in the exercise of professional judgment as an officer of the Superior Court, the attorney declines to perfect such appeal because, in the attorney's opinion, it lacks merit, such attorney is not required to do so but may instead simultaneously file a timely motion to withdraw and another motion to extend the appellate period to the full maximum of forty days as permitted by law. Practice Book § 4040. Such motions, if unopposed, will be granted ex parte and a new attorney appointed to review this record and make an independent determination of the merits of such appeal. If the second attorney determines it lacks merit, the reason for this opinion shall be promptly submitted to the court in writing. The party seeking the appeal will then be informed by the court clerk of the balance of the forty days in which to secure counsel for the purpose of taking such appeal, who may, if qualified, be appointed by the court to be compensated by the state. Douglas v.California, 372 U.S. 353 (1963); Fredericks v. Reincke,152 Conn. 501 (1964).
If such procedure satisfies the sixth amendment right to counsel in a criminal proceeding, it is a fortiori
appropriate where there are interests of a third party involved: those of the child whose interest in achieving permanent nurturing parents without unnecessary delay is entitled to at least as great a degree of consideration as those of the parents whose rights to raise the child are at issue. Even an unsuccessful appeal could delay permanent planning for years since no child may be adopted until the appellate process is exhausted.
CT Page 4747-N Foley, J.