[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
CT Page 7378
The Department of Children and Families (DCF) seeks to terminate the parental rights of Tracy Denise W. the female biological parent of these three children and to terminate the parental rights of the three male biological parents known as Craig W., James M. and Charles K. Each of the three children has a different male biological parent. Charles K., father of Imari and Craig W. father of Keonna had no interest in the proceedings and did not participate. James M., the male biological parent of Keon M. did participate in the proceedings and was present in court as was the children's female biological parent, Tracy W. Each parent was capably and competently represented by counsel in the proceedings.
According to the initial affidavits in the file supporting the original order of temporary custody, in July of 1991 a report was written for the Department of Children and Youth Services (DCYS) by a social worker who reported that Tracy W. had been incarcerated many times over the preceding several years; she had an unstable life and resided at a variety of addresses; she had an ongoing substance abuse problem and had been unwilling and unable to properly care for her children. The oldest two children who in 1991 were five years and two years of age respectively had lived the majority of their lives with their maternal grandmother. The maternal grandmother returned the children to live with Tracy on February 25, 1992. At that time, Keonna was five and a half, Keon was approximately three and Imari, the youngest child was three months old.
Previously when Imari had been born on November 22, 1991, mother and Imari tested positive for cocaine in their systems. On March 28, 1992 Tracy left her children unattended in an apartment and while alone Keon, aged three started a fire in the apartment in which he was burned and the two other children, as well as Keon, suffered smoke CT Page 7379 inhalation. Mother was subsequently arrested for risk of injury to her children and interfering with police. Tracy was incarcerated. DCYS effected a 96-hour hold and placed the children again with the maternal grandmother.
On April 1, 1992 the Department commenced a petition against mother alleging neglect and an order of temporary custody was issued. On January 28, 1993, the children were found to be uncared for. Specific expectations were set forth at that time. The expectations were signed by Tracy and James M. and called for, inter alia, visiting with the children as often as permitted by the Department. Fourteen months later in March of 1994 the Department of Children and Families initiated an action for termination of parental rights.
In citing the reasons for filing the petition the Department of Children and Families represented that since January 28, 1993 Tracy W. had only visited the children seven times, that Craig W. had not visited his child at all, that Charles K. had not visited his child at all and that James M. had only visited his child three times in the preceding year. The Department further alleged that Tracy W. had failed to rehabilitate herself from abusing drugs and alcohol and had failed to comply with the expectations set on January 28, 1993. That James M. had failed to rehabilitate himself from his continued involvement with the criminal justice system and that he had failed to comply with the court expectations. The Department further alleged that Tracy W. had no ongoing relationship whatsoever with the minor child Imari who had been in foster care for virtually all of her life and that neither Craig W. nor Charles K. had any ongoing relationship with their respective children.
With respect to the older two children it should be noted that Tracy W. was incarcerated at the Niantic Women's Correctional facility with a four-year sentence for possession of narcotics with intent to sell in June of 1989. Shortly thereafter her mother Bessie W. petitioned the Hartford Probate Court for temporary custody of Keonna and Keon. As indicated earlier those children remained with the maternal grandmother until February 25, 1992. Imari was born on November 22, 1991 and remained in her mother's care until her mother's arrest on March 28, 1992. CT Page 7380 Accordingly, since the 1989 these children Keonna and Keon were in their mother's care for a little over one month and Imari was in her mother's care for the first four months of her life. Aside from that there has been no parenting whatsoever by the female biological parent nor any parenting whatsoever by the male biological parents of these children.
In early January 1994, Tracy was at that time not incarcerated and apparently had become pregnant by James M. James M. at the time of trial renounced his involvement with Tracy which may in some measure have been motivated by the fact that he was also then involved with another woman Muriel W. whom he heavily depends upon to assist him in his bid to remain involved with his son Keon. The pregnancy of Tracy ended sometime in the spring of 1994 and James M. used the occasion of the funeral as a basis for furlough from the correctional center. He apparently told the prison authorities that he was the father. It should be noted that Muriel W., his present girlfriend and the mother of two of his other children, does seem to be a responsible caretaker who would offer good qualifications except that she has her own children whom she supports on AFDC and she ultimately admitted to the psychologist that James M. had never given her any money to assist in the support of the two children which they have together, that he had severe mood swings and a bad attitude prior to his most recent incarceration and that she confessed that he probably was doing drugs while living with her. Both James and Muriel stated that Muriel was supporting James, presumably on her AFDC checks.
James M.'s arrest record (State's Exhibit B) is nothing short of prodigious. His arrest record shows between 1982 and May of 1994 he had been arrested on 17 occasions. His convictions include assault, robbery, threatening, burglary, larceny, possession of narcotics, possession of narcotics with intent to sell, criminal mischief and failures to appear in court. Some of these charges are presently pending. Some of the more serious convictions included five years incarceration, execution suspended after 30 months for possession with intent to sell, five years execution suspended after 30 months, probation for five years for assault two, one year execution suspended probation for 18 months for assault three and three years for robbery. In addition to his CT Page 7381 criminal record which is described by the social worker as being that of a "career criminal", Mr. M. has been unemployed most of his life and has admitted to using heroin and other drugs and selling drugs just to get drugs for himself.
The only difficulty in severing the parental rights of James M. in and to the minor child Keon M. is the fact that Keon "naively" looks to this man for a chance to establish a relationship with a genetic male figure. Mr. James M. exploits this child's fantasy by seeking to remain his legal parent notwithstanding the fact that he has never supported the child, he has never had an active role in the life of the child and the visitation periods that have been arranged for him have not been consistently or regularly honored. At times visitation would be arranged, the child brought to DCF and the child would be subsequently greatly disappointed by the failure of his father to appear for visitation. When pressed under examination for his failure to appear he said "I got a lot on my mind, I be very busy." This was clearly the easiest expectation for the parent to achieve but as Dr. Freedman in his report indicated neither parent adjusted their life to the demands of adult life. Dr. Freedman further testified that he would not support the proposition of Mr. James M. caring for this child. Dr. Freedman indicated that James M. has too many problems. There are too many risks. It is too likely that a placement with James M. and Muriel W. would result in failure allowing this one child Keon to be separated from his siblings and to be left floating through the child welfare system alone. Dr. Freedman endorsed the prospect of the three children remaining together and being placed in adoption as a family. Dr. Freedman recognized that Keon was looking to a fantasy of his father as a best hope. "It represents a hope to be attached to somebody . . . a hope for same sex attachment". Dr. Freedman discounted entirely the possibility that James M. who was unable to make good decisions and judgments regarding his own life could provide the parenting skills necessary for Keon. This court concludes that it would be undesirable for these three siblings to be separated on the off chance that a relationship with an unreliable male biological figure would lead to meaningful parenting. Dr. Freedman has indicated that the attachment with the siblings is strong and stable. Mr. James M.'s relationship with Keon is CT Page 7382 neither constant, continuous nor stable. At one time when Keon was brought for visitation and James showed up, the child did not recognize him.
The court concludes therefore that it would be not in the best interest of Keon to be separated from his siblings.
The evidence indicates that Tracy W. has exhibited instability by not pursuing permanent housing, she does not remain the central figure in the children's lives. She maintains a transient life style and has no sense of urgency to be reunited with her children. James M., the father of Keon has not exhibited a sense of urgency in assuming a responsible position in his son's life. Between the period of May 27, 1993 and the date of October 26, 1993 when the social study was prepared Mr. M. had not visited the child even one time. Although Mr. M., through his attorney, verbalized an extreme interest in his son, his conduct belies his sincerity. Linda Harris-Neckles, the social worker, indicated that at times, pursuant to requests of James' attorney, a visitation schedule for weekly visits was established which were not kept. Later a monthly schedule was established and visits' here were not kept. The social worker concluded that Mr. M. had failed to show a genuine interest and appropriate parental motivation. She indicated that the child would be brought to the DCF office and father would fail to show up. She indicated that specifically she set up meetings in August, September and October and each time Mr. M. failed to attend. She concluded that Mr. M. was unreliable and irresponsible. The court finds that her conclusions were correct. Counsel for the minor child correctly indicated in argument that the single most important expectation and the easiest to accomplish was to regularly visit the child. Both Tracy W. and James M. failed to regularly visit their children. In point of fact the only visits that regularly occurred were when the children were brought to the mother in either a drug rehabilitation program or the Niantic Correctional Center. Neither parent exhibited the degree of interest and concern that can reasonably be expected of a parent.
Accordingly, the court finds that with respect to the statutory grounds for termination of parental rights, that CT Page 7383 by clear and convincing evidence that these three children have been abandoned by their parents in the sense that the parents have failed to maintain a reasonable degree of interest concern or responsibility as to the welfare of the children.
The court further finds that in a prior proceeding on January 28, 1993 the children were found to be uncared for. The mother and all three of the fathers have failed to achieve such degree of personal rehabilitation as would encourage the belief that within a reasonable time considering the age and needs of the children that they could assume a responsible position in the lives of their respective children.
With respect to Tracy W., it is the court's conclusion that there is no ongoing parent-child relationship that exists between Tracy W. and the minor child, Imari W. With respect to Craig W., the court concludes that there is no ongoing parent-child relationship between him and his daughter Keonna W. With respect to Charles K., the court concludes that there is no on-going parent-child relationship with respect to his daughter, Imari.
The court further finds that the grounds for termination have existed for more than one year.
Pursuant to § 17a-112, subparagraph d the court makes the following factual findings. Regarding the nature and timeliness of services offered by the Department of Children and Families the court finds that the Department referred Tracy W. for outpatient drug treatment program and community health services, that James M. was offered services for drug treatment but denied that he had a problem with drugs and that Tracy W. failed to comply with a self-referred counseling program through Families in Crisis. The court further finds that visitation schedules were prepared and that the Department made efforts to bring the children from time to time to the Niantic Correctional Center and to a drug treatment program known as NEON and arranged for supervised visitation.
Regarding the Department of Children and Family's efforts for reunification pursuant to the Federal Child Welfare Act of 1980, the court finds that DCF made CT Page 7384 reasonable efforts as outlined above and as far as is known acted in accordance with federal law. Regarding court orders, the Department with the approval of the court set reasonable and realistic expectations in order to reunify the family. These expectations were adopted at a court hearing and signed by Tracy and James. There was very minimal compliance on the part of both Tracy W. and James M. with the expectations and there were clear violations of the expectations in that Tracy remained involved with drugs and the criminal justice system and James was continuously involved in criminal activity. Their respective efforts to involve themselves in any meaningful way with their children was minimal, certainly not the focused and urgent interest of a person concerned with reunification.
Regarding significant emotional ties of the child towards parents, relatives and foster parents, the court concludes that Keonna does recognize Tracy as her female biological parent. Keon M. does recognize James M. some of the time, as his male biological parent. Neither person has served as a "mother" or "father" as those terms are commonly known and understood. Imari does not recognize either biological parent as a psychological parent figure. The children were initially placed with their maternal grandmother and the children remained in that foster setting for a very substantial period of time until the maternal grandmother acknowledged a drinking problem which required the children's removal in 1992. The social worker testified that the children are presently placed in a foster home which is a pre-adoptive setting for all three children. The foster parents are anxious to adopt all three children.
Regarding the age of the children at the time of the hearing Keonna was seven, Keon was five and Imari was two and a half years of age. These children require a secure and safe setting with a stable caretaker and neither parent can provide the stability of placement and continuity of care that is required for the children. Adoption is an appropriate and viable alternative for the children.
Regarding the parent's efforts to conform their conduct to the best interest of the children, neither of the parents who attended the hearing have made realistic and sustained efforts to conform their conduct to even CT Page 7385 minimally acceptable parental standards. Their conduct has not conformity to community standards for individual adults, let alone appropriate standards for responsible parents. Their conduct has resulted in their incarceration. Giving them additional time in which to bring their performance as parents within acceptable standards sufficient to make it in the best interest of the children to be reunited with them is not justified by their historic performance.
The court is required to make findings regarding prevention of meaningful relationships with the children by any person, foster-parent, agency which suggests unreasonable acts, economic hardships or the like. While the parents' means in this particular case were limited since neither parent was ever gainfully employed during the pendency of these proceedings, economic factors did not prevent regular continuing contact with the children. As far as known, the children were placed in reasonable geographical proximity to the parents. The Department of Children and Families attempted to encourage contact and establish visitation. No unreasonable conduct is noted.
Based upon all the foregoing findings the court concludes by clear and convincing evidence that is in the best interest of the children to terminate the parental rights of these parents. It is accordingly ordered that the parental rights of Tracy Denise W., Craig W., James M. and Charles K. are hereby terminated. The Commissioner of Department of Children and Families is hereby appointed the statutory parent. A permanency plan shall be submitted within ninety days. A motion to review plan for terminated child shall be filed in accordance with federal law.
APPEAL
The parents have twenty days from the date of this judgment in which to take an appeal. If an appeal is requested and trial counsel is willing to continue representation, this court will appoint such attorney to act as appellate counsel, at public expense if the appellant is indigent, until all appellate process is completed. Practice Book § 4017. If, however, in the exercise of professional judgment as an officer of the Superior Court, the attorney declines to perfect such CT Page 7386 appeal because, in the attorney's opinion, it lacks merit, such attorney is not required to do so but may instead simultaneously file a timely motion to withdraw and another motion to extend the appellate period to the full maximum of forty days as permitted by law. Practice Book § 4040. Such motions, if unopposed, will be granted ex parte and a new attorney appointed to review this record and make an independent determination of the merits of such appeal. If the second attorney determines it lacks merit, the reason for this opinion shall be promptly submitted to the court in writing. The party seeking the appeal will then be informed by the court clerk of the balance of the forty days in which to secure counsel for the purpose of taking such appeal, who may, if qualified, be appointed by the court to be compensated by the state. Douglas v.California, 372 U.S. 353 (1963); Fredericks v. Reincke.152 Conn. 501 (1964).
If such procedure satisfies the sixth amendment right to counsel in a criminal proceeding, it is a fortiori
appropriate where there are interests of a third party involved: those of the child whose interest in achieving permanent nurturing parents without unnecessary delay is entitled to at least as great a degree of consideration as those of the parents whose rights to raise the child are at issue. Even an unsuccessful appeal could delay permanent planning for years since no child may be adopted until the appellate process is exhausted.
Foley, J[.]